McPHERSON, District Judge.
The plaintiff has moved to remand this case to the state court, from whence it was removed to this court by the defendant telegraph company, a citizen of New York. The plaintiff and the defendants Mullen and Neely are all citizens of Iowa. More than $2,000 is in controversy.
The defendant company is engaged in doing a commercial telegraph business from points in Indiana to points in Iowa, as well as generally ■over the country. The plaintiff is a resident of the village of Manning, Iowa, and has been for many years, known by all the people of ■said village, and residing within a very few blocks of defendant’s ■office in the village. November 3, 1902, the following message was •given to defendant’s agent at the regular office in Huntington, Indiana, charges prepaid:
“Huntington, Indiana, Nov. 3, 1902/
•“Martin H. Free, Manning, Iowa:
“Mother near death’s door at Huntington. Am with her.
“[Signed] Ida Whittaker.”
The sender of the message, Mrs. Whittaker, is a sister of plaintiff. The message was not delivered to plaintiff until in the night of the €th, three days after it was deposited with the office at Huntington, Ind., although it was received by the defendants Mullen and Neely, night operators for the company at Manning, Iowa, a few minutes .after it was deposited in the office in Indiana. The failure to promptly deliver the message to plaintiff was the result of gross carelessness and negligence of both the company and Mullen and Neely. Had the message been delivered to plaintiff promptly, as it should bave been, plaintiff would have gone to Indiana, and would have seen his mother alive. But he was denied that privilege, because his mother died a few hours before the delivery of the message. By reason thereof he was greatly damaged, because of his mortification, humiliation, and grief. Such is the petition of plaintiff.
The petition for removal by the company and the bond therefor are in the usual form. It is also alleged that defendants Mullen and Neely are sham defendants, and were made defendants wrongfully and illegally, and for the single purpose of preventing the company from removing the case. It is also alleged that defendants Mullen and Neely were in the service of the company but a part of the time in November, 1902, at Manning, Iowa. That the only message received from Ida Whittaker, November 3, 1902, was addressed to Martin H. Freeman, and not M. H. Free, or Martin H. Free. Neither Mullen nor Neely received said message, but the message was *311 received by one O. J. Colver, the operator in charge of defendant’s office, who then was, and still is, a citizen of Colorado. This petition is verified. Accompanying the petition are the affidavits of Mullen and Neely. Each of those parties says that he did not receive the message; had nothing to do with the delay in its delivery; was not on duty when the message was received; but that the said Colver at Manning, Iowa, and he alone, had to do with it. The state court ordered the removal, and the record was filed in due time in this court.
The plaintiff moves to remand because the petition for removal, is not properly verified. This objection is wholly without merit: First, because it is verified by one of defendants’ counsel, showing himself to be in full charge of the case and possessed of knowledge of all the facts of the case; and, secondly, because a verification is not necessary.
Since the decision of the Dixon Case in 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, the practice has become quite common, and too general by far, to make some one a codefendant for the sole purpose of preventing the real defendant from trying his case in a circuit court of the United States. And, to prevent the removal, some citizen of the state is named as a codefendant, when the facts are that he was in some way only partially connected with the transaction, and oftentimes because upon some other occasion he had been about the premises.
In this case, by a petition not verified, plaintiff charges that the negligence was the joint and concurrent acts and omissions of the company and Mullen and Neely. But Mullen and Neely, by affidavit, say they were not on duty, received no message from Ida Whittaker; and then they say, and the verified petition for removal recites, that the only message received at that office from the lady was received by O. J. Colver, and that such message was not addressed to plaintiff, but to another name. If these things be so, then, when the message was deposited in the office at Huntington, Ind., it was not addressed to plaintiff, in which event the defendant company, of course, would not be liable. Or if, when deposited in the office in Indiana, the message was addressed to plaintiff, as he says it was, but' came to the Iowa office addressed to another party, the company would be liable, if there were damages. And on. these facts it is apparent that the change in the name occurred at some relay or transfer office, for which neither Mullen, nor Neely, nor Colver, nor any other person in or about Manning, would in anywise be responsible.
Plaintiff charges that if he had received the message he would have been able to go, and would have gone, to Indiana, and would have seen his mother before her death. He says that the negligent delay in delivering the message prevented him from seeing her. The only results were that he was subjected to mental anguish or grief, bringing upon him damages in a large sum. The message did not occasion any outlay of money, and he did not make any unnecessary trip, and he was not damaged in any way, other than by grief. No doubt herein is the “urgent” reason, although not disclosed by plaintiff, why he deemed it necessary to prevent, at all hazards, a *312 removal from the state court, where one rule is maintained as to the measure of damages, while it is possible that in the courts of the United States another rule would be observed. Mentzer v. Telegraph Co., 93 Iowa, 752, 62 N. W. 1, 28 L. R. A. 72, 57 Am. St. Rep. 294. But this question is not now ruled on. And for the same reason, no doubt, perhaps with others, defendant asks that the case be retained in this court. Until the science of law becomes an exact science, the courts will not be uniform in their holdings. And it often happens that the supreme court of a state, and the United States courts sitting in the state, differ on matters of general jurisprudence, and then the one party seeks the one court, and the other party the other court. All of which is quite natural. But the right of a party to a removal, or of the other party to prevent a removal, cannot be controlled by such motives.
Does the Dixon Case, above cited, rule this case? That case is so thoroughly analyzed, and what it does hold so clearly stated, and the true rule so forcibly presented by Judge Amidon, in the case of Helms v. R. R. Co. (C. C.) 120 Fed. 389, that further discussion is not necessary. But, briefly stated, the Dixon Case is not in point, and it does not control this case, for the following reasons: It was a death case. At common law there was no liability. The liability in the case was because of a Kentucky statute. The Supreme Court of that state construed the statute to mean that both the company and the employ»* were jointly liable, which holding and construction were binding on the federal courts. Again, in the Dixon Case, the specific acts oí negligence were not charged in the, petition. Dixon was killed by a train at a highway crossing. And it was charged that the death was occasioned by the joint negligence of the company, engineer, and fireman, which negligence was by the high rate of speed of the train, and the absence of signals, all of which may have been allowed by the rules and regulations of the company, as well as by the negligent acts or omissions of the engineer. But in the case at bar there are no such facts. The specific acts of negligence are charged. And, taking the petition as being true, the corporate defendant and all its agents and servants performed every duty until after the message was received at Manning, Iowa. And then some one on duty at the Iowa office negligently failed to deliver to plaintiff his message. There is no> Iowa statute for interpretation, and the case presents a question of general law. There was no rule, regulation, or general practice of the company that brought about, or that could have brought about, the result. The fault, and the only fault of any individual, was of the person on duty as operator at Manning, Iowa. And by reason of such fault, and that only, is the company liable, if the petition be true. So that, as it seems to me, the Dixon Case is not an authority on the state of facts as recited by plaintiff in" his petition. And while the opinion in the case cited is not an authority, being decided by a judge on the circuit, yet the presentation of the question is so strong that I fail to observe how it can be answered, and am content to follow it.
But aside from all that, what do we have? On the one side, the unsupported allegations of the petition, not verified, are to the effect *313 that all three defendants are jointly liable, and that because Mullen and Neely were the operators who received, and delayed delivering, the message. On the other side, we have the verified petition for removal, supported by the affidavits of both Mullen and Neely that they and neither of them were on duty; had nothing to do with either receiving or delaying the message; that the- only message received from Ida Whittaker was addressed, not to plaintiff, but to another party; and that message was received by an operator by the name of Colver. If the removal of this case can be prevented, then a little bit of display of the imagination, set forth in a petition unsupported by any kind of proof, can render nugatory the entire act of Congress upon the subject.
The motion to remand is overruled.
2. Defendants Mullen and Neely have demurred to the petition on the ground that plaintiff alleges no damages. And, as before stated, the only damages plaintiff claims to have suffered are by reason of grief or mental anguish. This demurrer was submitted without argument. It will be just as well to let the demurrer stand until the company pleads, and then the whole case can be considered.