GUSTAFSON v. CHICAGO, R. I. & P. RY. CO. et al.

(Circuit Court, W. D. Missouri, Western Division. February 8, 1904.)

No. 2,813.

1. REMOVAL OF CAUSES—FRAUDULENT JOINDER OF DEFENDANT TO PREVENT REMOVAL.

A plaintiff has the right to join a citizen of the same state with a citizen of another state as defendants, although his purpose is to thereby prevent a removal of the cause if the cause of action is in fact joint.

2. SAME—MANNER OF RAISING ISSUE.

Whether or not allegations of fact in a complaint intended to show a joint cause of action against two defendants are true may be put in issue by a petition for removal which alleges that the joinder was solely for the fraudulent purpose of preventing a removal, and may be inquired into and determined on a motion to remand; and if it is found that they were untrue, and that such fact was or could have been known to the pleader, the court is justified in drawing the conclusion, as a matter of law, that the purpose was to prevent the exercise of the right of removal by the nonresident defendant.

3. TORTS—JOINT RIGHT OF ACTION—SUFFICIENCY OF ALLEGATIONS.

In an action for a personal injury resulting from a collision between a moving train and a switching engine standing on the track, allegations in the petition that the railroad company failed to make proper rules for running its trains, or to put up proper station signals, and required the train to be run at a speed of 50 miles an hour, do not state any acts of negligence in which the engineer of the train co-operated so as to give a joint right of action against him and the company, nor is negligence imputable to him merely because he obeyed the order to run the train at such speed.

4. RAILROADS—NEGLIGENCE IN RUNNING TRAINS—SUFFICIENCY OF ALLEGATIONS.

Allegations of negligence against a defendant railroad company in the running of its trains over a particular line of track, in making stops at stations, and in not making time schedules are negatived by a further allegation in the same pleading that such track was owned by another company, which operated its own trains thereon, and that defendant ran its trains over such piece of track under an agreement with the owner; it being a matter of obvious and common knowledge that under such

¶ 1. See Removal of Causes, vol. 42, Cent. Dig. § 79.

circumstances the defendant did not exercise control over its trains in the matters specified.

5. REMOVAL OF CAUSES—JOINDER OF DEFENDANT TO PREVENT.

Where an attorney, when drawing a pleading, had knowledge of facts which showed that allegations of negligence made therein against a defendant were without foundation, or notice of other facts to put him on inquiry which would have led to such knowledge, both he and his client are chargeable therewith; and where such allegations were made for the purpose of showing a joint cause of action against two defendants, one a citizen of the state and the other of another state, it is a fair inference that the defendants were joined for the sole purpose of preventing a removal of the cause by the nonresident defendant.

6. TORTS—JOINT LIABILITY—WANTON ACTS OF SERVANT.

Where the complaint in an action for personal injury alleged that the engineer in charge of a railroad train "carelessly, recklessly, and negligently" disregarded and ran by signals given to warn and advise him of the presence on the track of a switch engine on which plaintiff was stationed, and carelessly, negligently, and recklessly ran by said signals at a dangerous rate of speed and against said switch engine, causing plaintiff's injury, such allegations are of the ultimate fact which constituted the proximate cause of the injury, and, while the railroad company might be liable therefor on the doctrine of respondeat superior, no cause of action against the engineer and the company as joint tort. feasors is shown as the plaintiff would be entitled to recover punitive damages against the engineer, but only compensatory damages against the railroad company.

On Motion to Remand to State Court.

Mosman & Ryan and Amos Townsend, for plaintiff.

Frank P. Sebree, for defendants.

PHILIPS, District Judge. This controversy arises on a motion to remand, combined with an answer in the nature of a plea in abatement. This suit was instituted in the state circuit court of Jackson county, Mo., and was removed therefrom to this court on the petition of the defendant the Chicago, Rock Island & Pacific Railway Company on the ground that the cause of action presents a separable controversy; the said railroad company being a nonresident citizen, while the plaintiff and the defendant Samuel Hanna are resident citizens of the state of Missouri. The petition for removal further alleged that the plaintiff had no reasonable ground upon which to base a cause of action for recovery against the defendant Hanna, and that, according to the petition, the defendant railway company was responsible alone for the cause of action. The petition then alleges that the said Hanna was joined as a defendant for the sole and fraudulent purpose of preventing the defendant from removing the action from the state court, and for the sole purpose of fraudulently defeating the jurisdiction of said United States court.

After the hearing of said motion and the issue on removal, the defendant railway company, by leave of court, was permitted to amend the fourth paragraph of the petition for removal, which amendment alleges, as did the original petition, that the cause of action against the defendants is separable, and omits the statement in the original petition that it discloses no ground of recovery against the defendant Hanna, and contains the same allegation, in effect, that said Hanna was joined as a codefendant for the fraudulent purpose of defeating the removal

of this action from the state court by the nonresident defendant, and to defeat the jurisdiction of this court.

This question of the right to amend the petition for removal in this court has recently been discussed and determined by Mr. Justice Brewer, of the Supreme Court, in Kinney v. Columbia Savings & Loan Association, 24 Sup. Ct. 30, 48 L. Ed. ——. It is decisive as to the right to make the amendment in question.

Indeed, the amendment to the petition for removal in this case, in legal effect, is little different from the original petition. While the original petition for removal averred that the petition did not show any grounds of recovery as against Samuel Hanna, and did show one against the defendant company, that was not the statement of a fact, but was a mere legal conclusion, drawn by the remover from the allegations of the petition. If it was a false conclusion in point of law, its omission from the amended petition is quite immaterial. The original petition contained the essential averment that the cause of action as to the defendant railway company was separable from that against the defendant Hanna, and that Hanna, the local defendant, was joined as a codefendant for the fraudulent purpose of preventing the nonresident defendant from removing the case into this court. The issue, therefore, on the motion to remand, is as to whether or not the petition on its face shows, as matter of law, that the cause of action against the defendants is joint, while the issue on the allegation that Hanna, the local defendant, was joined as a codefendant for the sole purpose of preventing the defendant railway company from removing the cause into this court presents an issue of fact, to be determined by the court on the plea.

It is to be conceded to plaintiff's contention that if, as a matter of law, he has a joint cause of action against the defendants, he had a right to sue them jointly, no matter if he did entertain the desire and purpose to prevent the defendant railway company from removing the case. On the other hand, if the plaintiff in the petition has alleged any fact intended to show a joint cause of action against both defendants, which the plaintiff at the time knew, or had reason to believe, was not true, that fact, under the allegations of the petition for removal, can be inquired into and determined on issue raised on the plea to the petition for removal. Union Terminal R. Co. v. Chicago, B. & Q. R. R. Co. (C. C.) 119 Fed. 209.

I will not attempt a résumé of the now familiar decision known as the "Dixon Case," reported in 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, as nothing determined by me here conflicts with what was really in contest in that case. The critical and clear analysis given of the Dixon Case by Judge Amidon in Helms v. Northern Pac. Ry. Co. et. al. (C. C.) 120 Fed. 389, leaves little need of further exposition.

Since the publication of the decision in the Dixon Case the practice of attorneys in personal injury cases, in joining a local resident defendant, like an engineer, brakeman, or other employé, with the nonresident railroad company, to prevent the removal by the railroad company from the state to the United States court, is becoming so universal as to invite the courts to closest scrutiny to see whether, in fact and law, there actually exists a joint cause of action, or merely a sim-

ulated one. While the policy of the judiciary act of 1887-88 (Act . Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]) was rather to restrict than enlarge the jurisdiction of United States courts, it is just as applicable to-day as it ever was what Judge Lurton in Arrowsmith v. Nashville & D. R. Co. (C. C.) 57 Fed. 169, quotes from the language of Mr. Justice Miller, that:

"It would be a very dangerous doctrine—one utterly destructive of the right. which a man has to go into the federal courts on account of his citizenship—if the plaintiff in the case, in instituting his suit, can, without any right or reason or just cause, join persons who have not the requisite citizenship, and thereby destroy the rights of parties in federal courts. We must therefore be astute not to permit devices to become successful which are used for the very purpose of destroying that right."

If this growing practice be further extended, under a latitudinarian construction, beyond what was really decided in the Dixon Case, and those in consonance therewith, the practical result is to be a denial to nonresident corporations of the right of removal from the local to the federal courts. The persistent insistence of attorneys for such plaintiffs is that just in so much as, by mere allegation in the petition, a joint cause of action can be apparently stated, regardless of the motive of the pleader and the underlying facts, they may effectually cut off. even a technical analysis of the petition, to see whether in point of law a joint cause of action is stated, and any resort to evidence in pais on the issue of removal and remand. But the right and the duty of the court are well recognized to examine the petition by its "four corners," to see if a joint cause of action is stated; for, no matter how designedly and repetitiously the pleader may assert that "the defendants" did so and so, such asservations will be treated as a mere brutum fulmen, if, taking the facts as a whole stated in the petition, they disclose, in contemplation of law, a separable cause of action against the defendants. As held by the Supreme Court of this state, the allegation of negligence on the part of the defendants in general terms is treated as mere surplusage—words without meaning—when preceded or followed by specific allegations of specific acts of negligence. Fuchs v. City of St. Louis, 167 Mo. 620, 640, 67 S. W. 610, 57 L. R. A. 136; Chitty v. Railway, 148 Mo. 64-75, 49 S. W. 868; McCarty v. Hotel Co., 144 Mo. 397, 402, 46 S. W. 172.

And as already stated, even where the petition on its face alleges a joint cause of action, or some joint acts of the defendants, the nonresident defendant may challenge the truth of it in his petition for removal by alleging that it was inserted for the purpose of preventing the exercise of the right of removal by the nonresident defendant, and this issue of fact is to be determined by the United States court. And if any material fact alleged in the petition, for the purpose of showing a joint cause of action, be found to be untrue in fact, and such fact was known to the pleader, or could have been known to him by the exercise of that inquiry which the law exacts, the court is warranted in drawing the conclusion, as matter of law, that the purpose was to prevent the right of removal by the nonresident defendant. Union Terminal Railway Co. v. Chicago, B. & Q. R. R. Co. (C. C.) 119 Fed., loc. cit. 213.

An analysis of the plaintiff's petition presents a strange medley of facts self-contradictory and pregnant with legal impossibilities. It discloses in the first paragraph the fact that the defendant railway company, under agreement, was running its engine and train of cars over the railroad of the Hannibal & St. Joseph Railroad Company between Cameron Junction, in Clinton county, Mo., by way of Harlem station, to Kansas City, Mo.; that at said Harlem there are railroad switch yards, consisting of a large number of side tracks parallel with the main line track, used for switching cars and making up trains, where a large volume of business is done upon said side tracks, and that frequently the main track is used and occupied by switching crews; that at the time of the plaintiff's injury he was a locomotive engineer, in the employ of said Hannibal & St. Joseph Railroad Company, managing a switch engine, with a switching crew in the yard; that he had his engine, with a large number of freight cars attached, on the main track of said railway; and while so engaged "the defendants, carelessly, negligently, and recklessly, and with great force and violence, ran a passenger train into, upon, and against his said switch engine, thereby greatly wounding, bruising, and injuring plaintiff, and rendering him a cripple for life." Then, to show the culpability of the defendant railway company, it alleges that one of its trains on which the defendant Hanna was the engineer at the time of the alleged injury was not running on schedule time, but, through the carelessness and negligence of the defendant company, was allowed to become more than an hour late; that the defendant railway company, its officers, agents, and servants, had carelessly, recklessly, and negligently failed to establish proper and suitable station boundaries and yard limits at said Harlem station, and to set up any signs, posts, or other suitable and visible objects to indicate where the yard limits of such station were, to advise its servants operating its engines and trains when entering and coming within the said yards and station limits; that the defendant company had carelessly, recklessly, and negligently failed to issue and promulgate, for the guidance of its servants operating its engines and trains, rules and regulations regarding the speed of trains, and having the same fully under control at all times, while running within the limits of the station; that said defendant, its officers, agents, and servants, knew the custom of switching crews to occupy and use at times the main-line track with engines, etc., in doing said yard work, and that such switch engines and cars might reasonably be expected to be occupying said main-line track at any time; that the defendant railway company carelessly, negligently, and recklessly caused, ordered, directed, and permitted its agents and servants, then and there running said passenger train, to run the same at a dangerous rate of speed, to wit, at 50 miles an hour, to make up lost time.

It is to be observed, in the first place, that if it be conceded that it was the duty of the defendant railway company to establish a schedule time table for the running of trains over the road at the point in question, to establish proper station boundaries at the yard limits at Harlem, and to set up signs, posts, and visible objects to indicate the yard limits of said station, and that it failed of its duty in this respect, what possible connection had the defendant Hanna, an engineer, with

such matters? These duties and obligations devolved upon the master alone. So that if these acts of negligence contributed to the injury in question, as it must be assumed the pleader intends by inserting them in the petition, there was no co-operation therein by the defendant Hanna, and consequently no joint cause of action for these derelictions of duty is stated. And it would entitle the defendant railway company, who alone is responsible for such dereliction, to remove the whole controversy into this jurisdiction. Fergason v. C., M. & S. P. Ry. Co. (C. C.) 63 Fed. 177, 179.

Likewise of the allegation made in the petition that the said "corporate defendant carelessly, negligently, and recklessly caused, ordered, directed, and permitted its agents and servants, then and there running and operating said engine and passenger train, to run the same at a very high and dangerous rate of speed, to wit, at 50 miles per hour, in order to make up the time they had so carelessly and negligently lost." If the defendant Hanna, the servant, in obedience to such command of the master, ran the train coming from Cameron Junction at a speed of 50 miles an hour, upon what principle of law can it be said that the servant could be held jointly with the master for merely executing the positive command of the master? In this day of "rapid transit" the law recognizes the right of railroad companies to run at a high rate of speed, and no negligence is imputable, even as against the company, per se, for running at such rate of speed, in the absence of some averment that the condition of the track and the situation was such as to render fast running imminently dangerous, and that this fact was known to the company. Without more, "the primary duty of the servant is obedience, and it is not to be expected that he will, upon mere imaginary danger, of which he may be conscious, assert his right to relinquish his employment." The law does not exact, under such circumstances, the duty of the servant to disregard directions of the master, thereby running the risk of the loss of his position. See Flynn v. Kansas City, etc., Railroad Company, 78 Mo. 195, 204, 205, 47 Am. Rep. 99. And, if he executed such command without any carelessness or negligence on his part, he would not be answerable to third parties, unless it were shown that the engineer knew, or had reason to believe, that such rate of speed was hazardous and likely to occasion injury to some third party. All the law would exact of him would be to quicken his apprehension and increase his vigilance in proportion to the obvious risk in so running his train. Nothing of the kind is alleged in this petition, and therefore no joint cause of action is thereby shown by the naked averment that the master ordered and directed the given rate of speed.

Superadded to this, the allegation of the petition itself, showing that the defendant company was running its cars over the railroad tracks owned by the Hannibal & St. Joseph Railroad Company, by agreement with the owner of the road, coupled with the evidence on the hearing of the issues joined on the motion to remand, clearly enough show that the defendant company had nothing to do with the making of time schedules or directing the running of its cars between Cameron Junction and Kansas City, and that it had nothing to do with the making of regulations establishing signals or governing in any way the entry of

cars to and through the switch yards at Harlem; that these matters were under the exclusive control and management of the Hannibal & St. Joseph Railroad Company. The court finds from the evidence on the hearing of said motion and issues that plaintiff's attorney who drew the petition in this case had notice of these facts, or was in possession of facts sufficient to put him on inquiry the proper pursuit of which would have disclosed to him such facts, at the time he drew the petition. He had for many years not long prior to this accident been the trial attorney of the said Hannibal & St. Joseph Railroad Company, which owned the track and switch yards in question. When pressed on the witness stand for a direct answer to the question whether he did not know that the defendant railway company was running its trains over a part of the road in question when he brought the suit, he became tactical, and objected to the questions put to him for irrelevancy and incompetency. His answers were qualified with the statement: "I do not know that I ever saw the contract or knew what their rights were. Not having seen the contract, I have no information." But finally he admitted that, from his experience as a lawyer of the road, "I knew they were under a common head; I supposed they were under a common management."

In law notice is actual when the party sought to be affected by it knows the particular fact in question, "or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information, and it embraces all degrees, direct and indirect, of evidence." Rhodes et al. v. Outcalt et al., 48 Mo. 370. Judge Sanborn, in Percy v. Cockrill, 53 Fed. 875, 4 C. C. A. 73, 10 U. S. App. 574, expressed the rule as follows:

"Notice of facts and circumstances which would put a man of ordinary intelligence and prudence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. 'Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. Where a person has sufficient information to lead him to a fact, he shall be deemed conversant with it.'"

When the plaintiff's attorney alleged in his petition that the defendant company was running its cars over the track of the Hannibal & St. Joseph Railroad Company under an agreement with it, taken in connection with the testimony on the hearing, he was in possession of a most essential fact, and the least inquiry on his part of the officers of the Hannibal & St. Joseph Railroad Company, his old client, would have enabled him to see the agreement itself or learned its purport.

Besides, there are some things so obvious to the common experience and observation of men in certain relations that the law will not permit them to shut their eyes and say, "I do not know because I do not choose to look;" or, as Judge Story expressed it, "One cannot wink so hard as not to see." Every sensible man, and especially an attorney of long standing, of superior intelligence, like the plaintiff's principal attorney, for many years connected with the legal department of a railroad, must be presumed to know the physical fact that two separate railroad companies, operating their trains over the same line, must be

subjected to the control, management, and direction of one mind, prescribing the signals, regulating and directing the manner of running of trains over such line; that, in the very nature of the case, the independent operation by each company of its trains over the same track would be attended with such hazards, destruction to life and property, as to compel the subjection of such operations to the exclusive management of one mind and one authority. Neither is it too much for the court to assume that it comes within the knowledge and observation of all persons conversant with such a situation that when the cars of another railroad company are permitted by the owner of the road, who is operating its own trains cotemporaneously, to run over its tracks, it must be in subordination to the control and direction of the owner company. It would be such an extraordinary, unusual, and unnatural condition that the owner of a railroad, daily and hourly operating its own trains thereon, licensing another road to run its cars over a part of such line, would surrender its supremacy and right to prescribe rules and regulations for this joint operation, and the control of its own switch yards, to such licensee, as to devolve upon the party who asserts that such licensee had such control to specially aver and prove the existence of such exceptional condition.

The knowledge of the attorney at the time he drew the petition is imputable to the client. The Distilled Spirits, 11 Wall. 356, 367, 20 L. Ed. 167; Hart v. F. & M. Bank, 33 Vt. 252; Law Register, May, 1872, p. 144.

When, therefore, the plaintiff predicated an action of negligence of the defendant company on the failure to prescribe proper rules and regulations for its trains over the track in question to make a regular schedule time, and for failure to maintain proper safeguards and signals in and about the switch yards at Harlem, he knew these were duties not devolving on the defendant railway company, as these were matters over which it had no control, and their insertion in the petition warranted the allegation in the petition for removal that it was done for the purpose of showing a joint cause of action, when coupled with the averments in the petition that the defendants carelessly, negligently, and recklessly did these things, in order to prevent the removal of the case by the nonresident defendant. It should logically follow that as the engineer, Hanna, was running his train between Cameron Junction and Kansas City under the regulations and directions of the Hannibal & St. Joseph Railroad Company as to when he should start and how he should run and where he should stop on the main track and into the switch yard at Harlem, the Rock Island Company could not be held for the manner of running its cars by the engineer at the time and place. As said by the Supreme Court of Iowa in Miller v. Railroad Company, 76 Iowa, 655, 39 N. W. 188, 14 Am. St. Rep. 258:

"It [the train] was not running under any time card or by the direction of any train dispatcher of the defendant. The fact that the engineer, fireman, brakeman, and conductor, who composed the train crew, were retained upon defendant's pay rolls, and received their wages from the defendant, does not tend to show that the defendant retained any control of the movements of the train."

So, in Smith v. R. R. Co., 85 Mo. 418, 55 Am. Rep. 380, it was held that inasmuch as the defendant railroad company, over the line where

the accident occurred, was running under the schedules, direction, and management of another railroad company, it could not be held responsible therefor.   The court said:

"The trainmen, though in the permanent employment of the defendant, were, while moving the train from St. Louis to Pacific, under the exclusive control and management of the Missouri Pacific, and the engineer and fireman were in the employment of the latter company; yet not an order could the defendant company have given as to the running of that train between St. Louis and Pacific. * * * It certainly would be an anomaly to hold one responsible for the acts of another, over whom he had no control. Such a principle obtains in no civil action between individuals, and no reason can be assigned why it should apply in suits against corporations."

In Brady v. R. R. Co., 114 Fed. 107, 52 C. C. A. 48, 57 L. R. A. 712, Judge Sanborn said:

"In an action against an alleged master or principal for the act of his alleged servant or agent, under the maxim respondeat superior, there can be no recovery in the absence of the right and power in the former to command or direct the latter in the performance of the act charged, because in such a case there is no superior to answer."

The defendant company was without the power to prescribe any schedule time for running its trains when and where the accident occurred. It was without the power to direct the engineer when to start and where to stop, how fast or how slow he should run, how or where he should enter the switch yards, or to make any regulations respecting safeguards or signals in and about the switch yards.   There certainly can be no responsibility on its part for any act of the engineer which it was without the power to direct or control.   And if it should be said that the act of the engineer in disregarding the signal given him by the Hannibal & St. Joseph Railroad Company, and recklessly running onto the plaintiff, was so outside of the directions given him by the Hannibal & St. Joseph management as to absolve it from liability for the injury inflicted, and therefore the responsibility ought to be cast upon the owner of the train, which it had placed the engineer in charge of, this accountability must rest entirely upon the rule of respondeat superior, and not upon the ground that the owner is a joint tort feasor.

If we proceed to the further fact, alleged in the petition, that the defendant Hanna "carelessly, recklessly, and negligently disregarded and ran by signals given to warn and advise him of the presence of the switch engine and of the plaintiff upon said main track; that the defendant Hanna knew of the presence of the plaintiff and his switch engine upon said main track, or by the exercise of the ordinary care in running his engine and train could and would have known thereof; and knowing that switch engines and cars were accustomed to use the main line track in doing the switch work at said yards, etc., carelessly, recklessly, and negligently ran said engine past and by said signals at said high and dangerous rate of speed, and upon, into, and against said switch engine and this plaintiff"—it results that this was the ultimate act and proximate cause of the injury, for which he would be answerable to the plaintiff in an action of trespass vi et armis.   And while the defendant company would be liable to the party injured in an action on the case, it would be predicable alone upon the doctrine of

respondeat superior, founded on principles of public policy. There would be no cause of action against them as joint tort feasors, for the reason that the defendant company not only did not actively participate in this willful and wanton act of the engineer, but the engineer was acting outside of his duty in performing his obligations toward the master.

Judge Bliss, in his work on Code Pleading, § 83, says:

"Persons are not jointly liable for a tort merely because they may have some connection with it, even if it may give a several cause of action against them. There must be a co-operation in fact; 'there must be some community in the wrongdoing among the parties who are to be united as codefendants; the injury must be in some sense their joint work.'"

And Pomeroy, in his work on Code Remedies, at section 307, speaking of the right of the actor to proceed against the defendants jointly for an injury resulting from negligence, want of skill, fraud, and the like, says:

"In order, however, that the general rule thus stated should apply, and a union of wrongdoers in one action should be possible, there must be some community in the wrongdoing among the parties who are to be united as codefendants; the injury must in some sense be their joint work. It is not enough that the injured party has on certain grounds a cause of action against one for the physical tort done to himself or his property, and has, on entirely different grounds, a cause of action against another for the same physical tort. There must be something more than the existence of two separate causes of action for the same act or default to enable him to join the two parties liable in the single action. This principle is of universal application."

The cases holding that the injured party may sue jointly the master and the servant limit this right to the instance where the injury results merely from the negligence of the servant; that is, the failure to do something which the servant ought to have done, but negligently failed to do. Even they hold that such action does not lie against the master and servant jointly for a willful injury done by the servant while engaged about the master's business. This is so held in the leading case of Wright v. Wilcox, 19 Wend. 343, 32 Am. Dec. 507, so frequently cited by the advocates of the right of joint action against the master and the servant. I undertake to say that no well-considered case in modern jurisprudence can be found where it is held that where the servant is not only guilty of an act of negligence, but of an act of positive misfeasance, outside of any imposed duty of the master which directly occasions the injury, he is suable jointly with the master, when the master's liability springs alone from the doctrine of respondeat superior, and not as an active participant in the trespass.

This, it seems to me, must be the law of this case, for the reason that the rule contended for would disregard and overturn a well-settled rule of the common law that there can be no apportionment of contribution among tort feasors. If a recovery can be had in an action against a railroad company and its engineer jointly for the willful and reckless trespass of the engineer in running his train by in spite of a known signal given to him, and recklessly dashing into another train on the track, injuring its occupants, a judgment therein would conclude both defendants that it was a joint act of misfeasance

on their part.  Both defendants being parties to the judgment, a general verdict on such a petition would conclude both defendants as to every fact included within the allegations of the petition.  Cromwell v. County of Sac, 94 U. S. 352, 24 L. Ed. 195.  This being so, what becomes of the doctrine that where the master is held to respond for the wrongful act of the servant, done without the master's participation or direction, the master may have recourse against the servant for full restitution?  Judge Story, in his work on Agency (9th Ed.) pars. 308, 309, discussing the liability of the master, says:

"The master is always liable to third persons for the misfeasances and negligences and omissions of duty of his servant in all cases within the scope of his employment.  So the principal, in like manner, is liable to third persons for the like misfeasances, negligences, and omissions of duty of his agent, leaving him to his remedy over against the agent in all cases when the tort is of such a nature as that he is entitled to compensation."

It is upon this ground that the Supreme Court of Maine, in Campbell v. Sugar Company, 62 Me. 553, 16 Am. Rep. 503, said:

"The proper adjustment and the final responsibility between them cannot well be effected if one has distinct grounds of action against them—against the agents for their own negligence, against the principals because the law makes them responsible for the negligence of their agents—is permitted to recover against both in one suit."

The only innovation made upon this rule in this state is found in section 2870, Rev. St. Mo. 1899, c. 17, entitled "Damages and Contributions in Actions of Tort," which provides that:

"Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract."

The effect of this statute is to give to the defendants who are sued jointly "in an action for the redress of a private wrong," where one of them satisfies the judgment, the right to go upon the codefendant merely for contribution; that is, to compel his codefendant to contribute his proper proportion of the sum paid by him.  Even this statute assumes that there is a joint liability among the several defendants; but it does not touch the common-law rule that where the master has been held to respond in damages for the negligence of the servant, upon grounds of public policy, without any active participation on the master's part in the wrongful act of the servant, the master is entitled to full restitution for the whole amount he has been compelled to pay out.  This criticism does not conflict with the ruling in the Dixon Case, for the reason that there the ground of joint recovery was for a mere negligent act of the servant.  In such suit the action is one on the case, the petition on its face disclosing the fact that the sole ground of recovery against the master is because of the doctrine of respondeat superior.  A joint judgment, therefore, might not preclude the master's right of action against the servant for full restitution, as the record probably would not show that the master was an active joint tortfeasor, as it would be in the case at bar.

There is still another view, arising on one of the allegations of this petition, which shows that the cause of action against the defendants

is not joint. As already quoted from the petition, it charges that when the defendant engineer approached the switch yards at Harlem, Mo., he carelessly, negligently, and recklessly disregarded and ran by signals given to warn and advise him of the presence of the switch engine and of the plaintiff upon said main track. If this be so, that was the causa causans of the injury, and was wantonly committed by the engineer despite the signal warnings given him to prevent the collision. It was a physical impossibility for the defendant company to have been present at that instant, directing or participating in this reckless act of the engineer. By the use of the accumulated epithets that this was done "carelessly, negligently, and recklessly," the term "recklessly" thus employed is tantamount to the allegation that it was "a wanton disregard of all consequences," and would warrant the jury in awarding punitive damages against the defendant Hanna. Times Publishing Company v. Carlisle, 94 Fed. 773, 36 C. C. A. 475. Such an allegation in the petition, without more, would warrant the court in instructing the jury that the plaintiff, if the allegation be sustained by the evidence, would be entitled to exemplary damages as against the defendant Hanna; and this fact, manifest on the face of the petition, presents a separable controversy as to the defendant company under the removal act. Davenport v. Southern Ry. Co. (C. C.) 124 Fed. 983.

It is expressly held in Lake Shore, etc., Ry. Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, that:

"In actions of tort the jury, in addition to the sum awarded by way of compensation for the plaintiff's injury, may award exemplary, punitive, or vindictive damages, sometimes called 'smart money,' if the defendant has acted wantonly or oppressively, or with such malice as implies a spirit of mischief, or criminal indifference to civil obligations."

—But that such punitive damages cannot be awarded against the railroad company which did not participate in the offense. The court said:

"A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent."

This for the reason that the accountability of the master in such case arises by reason of the doctrine of respondeat superior.

The provisions of the Missouri statute in such action to entitle the plaintiff to punitive or exemplary damages, requiring that he must make separate prayers, stating the amount of compensatory damages and the amount of punitive damages claimed, has no application to the practice in the federal court. Times Publishing Co. v. Carlisle, supra. The plaintiff is entitled to such relief as the facts stated entitle him, regardless of the prayer of the petition.

This court is unwilling, in order to make contribution to these latter-day efforts, in cases like this, to avoid the removal of causes from the state to the United States Circuit Courts, to efface the many ancient landmarks of the common law involved herein, founded, as they are, in wisdom.

The application to have this case remanded is denied.