## DAVENPORT v. SOUTHERN RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1905.)

### No. 547.

REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—JOINT ACTION FOR TORT.

A complaint in an action against a nonresident railroad company and certain of its servants, residents of the state, to recover for the death of a person, caused by acts of the servants committed in the course of their employment, although not by express order or in the presence of any officer of the company, but which acts are charged to have been negligent, willful, reckless, and malicious, does not state a separable cause of action which renders the cause removable by the railroad company alone, under the decisions of the Supreme Court, when it is alleged that the injury occurred through the joint and concurrent negligence of the defendants.

[Ed. Note.—Separable controversy ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

Purnell, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

For opinion below, see 124 Fed. 983.

H. J. Haynsworth (Haynsworth, Parker & Patterson, on the brief), for plaintiff in error.

T. P. Cothran, for defendant in error.

Before GOFF, Circuit Judge, and PURNELL and McDOWELL, District Judges.

McDOWELL, District Judge. This action was instituted in a state court of South Carolina, and was removed to the United States Circuit Court for the District of South Carolina by the nonresident defendant, the Southern Railway Company. A motion to remand was overruled, and at the trial a verdict for the defendant was directed, and judgment entered accordingly. The complaint reads as follows:

### COMPLAINT.

STATE OF SOUTH CAROLINA, COUNTY OF GREENVILLE.

IN COURT OF COMMON PLEAS.

William Davenport, as administrator of the estate of Emma Davenport, deceased, plaintiff, against Southern Railway Company, Richard Joel and William Jones, defendants.

The plaintiff, complaining against the defendants, alleges:

(1) That the defendants Richard Joel and William Jones are residents of the county and state aforesaid.

(2) That the defendant Southern Railway Company is a corporation duly chartered under the laws of the state of Virginia, and is the owner of and operates a certain line of railway in the state of South Carolina, extending from the city of Greenville by the town of Piedmont to the city of Columbia, which railway was formerly known as the Columbia & Greenville Railroad. And the Southern Railway Company is engaged in the business of a common carrier on said railroad, and has an office in the county and state aforesaid.

(3) That at Piedmont, in the county and state aforesaid, there are located the mills and mill village of the Piedmont Manufacturing Company. That

said mill village is quite populous, containing several thousand inhabitants. That the lands on which the said mills and village are situate are owned by the Piedmont Manufacturing Company, and extend to within a few feet of the station of the Southern Railway Company at said place.

(4) That many years ago a spur or side track was constructed from the main line of said railroad at a point near the station at Piedmont to a point near the mills of the Piedmont Manufacturing Company, a distance of about one mile; the said spur or side track extending along and over the lands of the said Piedmont Manufacturing Company. That the said Southern Railway Company does not own the land or the right of way over which the said spur or side track extends, but is maintaining the said track, running its cars thereon as licensee, and was and is without exclusive rights thereto. That the said spur is seldom used, and only for the purpose of hauling freights to and from the said mill. That no locomotive is kept at the station at Piedmont, and that the said spur or side track is used only at such times as there happens to be a freight engine at said station.

(5) That a short distance from the said mills, and near the center of the town of Piedmont, the said spur or side track crosses a deep hollow or valley over which is a long trestle, some thirty feet high. That a plank walkway extends along said trestle from one side to the other, and this has been habitually used as a public walkway on which the people of the town of Piedmont, including men, women, and children, some of them being of very tender age, have been accustomed immemorially to travel, to wit, for the space of more than twenty years, as plaintiff is informed and believes. This fact was well known to the defendants. And that the Southern Railway Company has made no objection to such use, and has taken no steps to prevent the same, and has acquiesced therein.

(6) That Emma Davenport, late of the county and state aforesaid, was the wife of William Davenport, and that they, with their children hereinafter named, resided in the town of Piedmont; and that the said William Davenport, together with his daughter Ida and his son John Allen, were in the employ of the Piedmont Manufacturing Company; and that the said family resided in and rented one of the tenement houses in Piedmont belonging to said Piedmont Manufacturing Company, which was situate on the opposite side of the said hollow from the mills of the said company, and were entitled to use the said walkway.

(7) That on the morning of January 31, 1903, while the said William Davenport and his said two children were at work in the mills of the Piedmont Manufacturing Company, the said Emma Davenport had occasion to go from her house to that portion of the town lying near the said mills, and she took her little boy, Mack, a child of five years of age. That in doing so, she, in pursuance of the usual custom and practice of the said people residing in said village, walked with her son along the plankway over the said trestle. That she had nearly reached the opposite side of the trestle, when she suddenly saw a hand car heavily loaded with cross-ties coming from behind a bend in a deep cut only a short distance away, and approaching her with great speed. That, realizing her inability to reach the end of the trestle towards which she was going in time to escape the hand car, and that her only chance of escape was to retreat to a bench or safety place near the middle of said trestle, she gathered her child in her arms, and ran back toward said safety place, thus endeavoring to escape the hand car. That just before she reached the said safety place she was struck by the hand car and violently thrown from the trestle with great force, her child being still in her arms. That she fell to the ground below, a distance of 30 feet, and her skull was broken, and her shoulder and collarbone and chest crushed in; from which injuries she suffered great pain and died shortly thereafter.

(8) That the defendants Richard Joel and William Jones were section hands in the employ of the Southern Railway Company at and near Piedmont, and in pursuance of their employment they had previously carried the said hand car from a point on the main line over the said spur or side track across the trestle to a point near the mills of the Piedmont Manufacturing Company, and had there loaded the same heavily with cross-ties. That in returning they pushed the said hand car to a point where it struck a downgrade leading

135 F.—61

towards said trestle, and at that point they negligently and recklessly turned loose said hand car, and without getting on the car, or taking any precautions whatever to control and direct its movements, and without any warning or notice whatever, and without taking any steps to see that the track was clear and that no one would be endangered, they let the said car go forward with great speed and violence, and that in its unrestrained course it ran upon and killed the said Emma Davenport. That the point where the hand car was turned loose was some three hundred feet, more or less, from the trestle, and the view of the trestle being shut off by the sides of a deep cut, through which the spur or side track passed, and in doing so bends; so that the said Emma Davenport could not see the said car until it was very near to her, and the defendants gave her no notice of her peril until it was too late to escape.

(9) That the conduct of the defendants in turning loose the said hand car loaded with cross-ties in the midst of the said town of Piedmont, and in allowing it to rush uncontrolled across the said trestle, which they well knew was habitually used by the employés of the said mills and their families, including women and children, and without taking any steps to see that the way was clear, was reckless, willful, and malicious, and in total disregard of the safety of the public, and that this was the proximate cause of the death of the said Emma Davenport.

(10) That the defendants, in the handling of the said car as aforesaid, and in allowing it to escape and kill the said Emma Davenport, were negligent.

(11) That the death of the said Emma Davenport occurred through the joint and concurrent carelessness, negligence, recklessness, wantonness, and willfulness of the defendants as aforesaid.

(12) That the said Emma Davenport left surviving her her husband, William Davenport, and her five children, Ida Davenport, who was fourteen years of age; John Allen Davenport, eleven years of age; Geneva Davenport, eight years of age; Mack Davenport, five years of age; and Lillie, an infant of eight months. That by the death of the said Emma Davenport this plaintiff has been deprived of a devoted wife, and her said children have been deprived of the care and attention of a devoted mother. That they have been damaged by the death of the said Emma Davenport as aforesaid in the sum of twenty thousand ($20,000) dollars.

(13) That the plaintiff, William Davenport, has been duly appointed administrator of the estate of Emma Davenport, deceased, by the probate court for Greenville county, and now brings action for the benefit of her husband and children as aforesaid.

Wherefore the plaintiff prays judgment against the defendant for the sum of twenty thousand dollars, and for the costs of this action.

Haynsworth, Parker & Patterson, Plaintiff's Attorneys.

May 9, 1903.

It has been for many years a gravely disputed question whether a complaint setting out a misfeasance committed by a servant in the course of his employment, not in the presence of, and not by the express command of, the master, resulting in an injury to a third person, states a case of joint tort. The overwhelming weight of authority among the subordinate federal courts is to the effect that it does not. See 18 Ency. Pl. & Pr. 230, 231; Warax v. Cincinnati R. Co. (C. C.) 72 Fed. 647; Hukill v. Maysville R. Co. (C. C.) 72 Fed. 753; Landers v. Felton (C. C.) 73 Fed. 311; Helms v. N. P. R. Co. (C. C.) 120 Fed. 389; Free v. W. U. Tel. Co. (C. C.) 122 Fed. 309; Bryce v. Southern R. Co. (C. C.) 122 Fed. 709; Gustafason v. Chicago R. Co. (C. C.) 128 Fed. 85; Amer. Bridge Co. v. Hunt, 130 Fed. 302, 64 C. C. A. 548. Among the state courts there is much authority for either view. There is, so far as we are advised, no statute in South Carolina specifically giving a joint right of action in all cases of torts by servants. The common-law rule adopted by the courts of that state is that the identification of master and serv-

ant is so complete that when both are liable the liability may be enforced in a joint action, at least in cases (such as we have here) where the act of the servant (Hukill v. Maysville R. Co. [C. C.] 72 Fed. 753; Osborne v. Morgan, 130 Mass. 102, 39 Am. Rep. 437) is a misfeasance (Schumpert v. Southern R. Co., 65 S. C. 332, 43 S. E. 813, 95 Am. St. Rep. 802, and cases there cited).

The recent case of Southern R. Co. v. Carson, 194 U. S. 136, 24 Sup. Ct. 609, 48 L. Ed. 907, even if earlier opinions of the Supreme Court did not lead to such result, seems to us to make it imperative that this court reverse the trial court, and direct that this cause be remanded to the state court.

In Southern Railway Co. v. Carson, supra, the plaintiff, a citizen of South Carolina, while employed by the Southern Railway Company as a flagman, was sent in between two cars to make a coupling. While in this position the injury to the plaintiff happened, as is alleged in the complaint, by reason of the "joint and concurrent carelessness, negligence, and recklessness of the defendants," the railway company and the engineer and conductor of the train. The action was brought in a South Carolina state court. The two employé defendants were citizens of that state, and the railway company a citizen of Virginia. No effort to remove the case to the federal court was made. The jury brought in a verdict against the railway company alone, judgment in accordance therewith was entered, and an appeal taken to the State Supreme Court, which affirmed the judgment of the lower court. On writ of error to the Supreme Court of the United States, it was argued that a verdict could not legally have been rendered against the company alone, because, if it had been sued alone, it would have had the right of removal. The Chief Justice said:

"The right of removal depends on the act of Congress, and the company not only, on the face of the pleadings, did not come within the act, but it made no effort to assert the right."

And then follows, inter alia, the often-quoted statement:

"A defendant has no right to say that an action shall be several which the plaintiff seeks to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is * * * whatever the plaintiff declares it to be in his pleadings."

So far as can be discovered from the report of the Carson Case, the plaintiff's pleadings did not differ in any essential respect from the complaint in the case at bar.

It is unnecessary to state our understanding of the rule intended to be laid down by the Supreme Court, to be gathered from the Carson Case; Chicago R. C. v. Martin, 178 U. S. 245, 20 Sup. Ct. 854, 44 L. Ed. 1055; Railway Co. v. Dixon, 179 U. S. 140, 21 Sup. Ct. 67, 45 L. Ed. 121; Powers v. C. & O., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673, and the earlier cases there cited. It is sufficient to say that any possible interpretation of that court's meaning leaves us with a ruling under which this case must be remanded to the state court.

1. Let it be assumed that the Supreme Court gives its adherence to the doctrine that the identification of master and servant is so complete

that a statement of facts showing that a misfeasance by a servant was committed in the course of his employment, although not in the presence of, and not by the express order of, the master, is a statement of a joint tort. On this assumption, there was clearly no right of removal here. The complaint states facts showing that the relation of master and servant existed, and that the tort was committed by the servants in the course of their employment. If the facts stated showed a joint tort, as they do under this rule of law, there was, of course, a joint liability, and no right of separation by any defendant.

2. Let it be assumed that the Supreme Court intended that in states holding the above-stated doctrine the federal courts in such states should follow the rule of the state courts. Helms v. N. P. R. Co. (C. C.) 120 Fed. 389, 398. On this assumption, the federal trial court erred, in that it did not follow the settled doctrine of the South Carolina Court of Appeals. See Schumpert v. Southern R. Co., supra, and cases there cited.

3. Let it be assumed, as was suggested by Judge Hanford (Creagh v. Equitable Ins. Co. [C. C.] 88 Fed. 1, 3), that the Supreme Court gives its adherence to the doctrine heretofore followed in the subordinate federal courts—holds that want of joint liability may be used as a defense in the state court, but denies that the want of joint liability gives a right of removal, or, in other words, denies that a misjoinder of causes of action is matter to be considered on a motion to remand. Dougherty v. Yazoo R. Co., 122 Fed. 205, 58 C. C. A. 651; Fogarty v. So. R. Co. (C. C.) 123 Fed. 973; Dougherty v. Atchison (C. C.) 120 Fed. 239, 240. On this assumption, of course, the case at bar should be remanded to the state court.

4. Let it be assumed that the Supreme Court intended that a mere allegation, in the nature of a conclusion of law, to the effect that there was concurrent negligence or a joint tort—even where the facts stated show, under the doctrine of the subordinate federal courts, that there was no concurrent negligence and no joint tort—makes a case which is not removable. On this assumption, also, the case must be remanded. We think the facts stated in the complaint at bar fail to show a case of joint tort, under the doctrine of the lower federal courts. But paragraph 11 does, by way of a conclusion of law, allege that the death of the intestate occurred through the joint and concurrent negligence of the defendants. It is generally true that ambiguities in pleadings are to be construed against the pleader, but there is no room for doubt here as to the pleader's intent in the use of the word "defendants." He did not mean merely the two servants. He meant all the defendants. There was no sufficient reason for charging that the negligence was "joint and concurrent" if the pleader referred only to the two servants. The facts already stated showed that the act complained of was jointly committed by the two servants. And there was good reason for making this allegation if the pleader referred to all the defendants.

It follows that we must reverse, and direct that the cause be remanded to the state court. No consideration has been given the instruction of the trial court to find for the defendant. The lower federal court had no jurisdiction to try the case on its merits.

Reversed.

PURNELL, District Judge (dissenting).    I cannot concur in the conclusion reached by the court, for the following reasons:

Suit was instituted in the court of common pleas for Greenville county, S. C., for $20,000 damages on account of the death of Emma Davenport at Piedmont, S. C.    The action was brought against the Southern Railway Company and Richard Joel and William Jones, employés of said company; the complaint charging that the deceased was knocked off a trestle by a loose hand car loaded with cross-ties, negligently, recklessly, and willfully permitted to escape by said employés.    Within due time the defendant railway company filed its petition for removal of the United States Circuit Court for the District of South Carolina, which was granted.    Plaintiff filed notice of motion to remand the case to the state court, which motion was heard and refused.    On October 22, 1903, the case was tried before a jury.    At the close of plaintiff's testimony the court directed a verdict for the defendant.    From the judgment entered upon this verdict plaintiff appealed.

The facts developed in the testimony for the plaintiff are substantially as follows:    At Piedmont, a station on the defendant's railroad, there is a large cotton mill about a mile from the station.    There is a spur track leading from the station to the mill, for the most part upon the land of the cotton mill, but laid under an arrangement between the mill and the railway company by which the track is kept up by the railway company, and its trains operated thereon as the shipping necessities of the mill require—not on any schedule, but irregularly.    At the time of the year at which the killing occurred—being the busy season—trains are run over the spur several times during the day.    On this spur track there is a trestle about 200 yards long and 30 feet high.    Between the rails a plank is laid from one end of the trestle to the other.    Over this trestle factory operatives were accustomed to walk daily, though there was a street and path almost as convenient.    There had been signs up, warning people not to use the trestle, but these had disappeared, and there were no such signs at this time.    Beyond the trestle from the station there is a sharp ascending grade, and a curve to the right through a cut and grove of trees.    Further on is the wastehouse of the cotton factory, not visible from any part of the trestle.    On January 31, 1903, the defendants Richard Joel and William Jones had been sent by the section foreman with a hand car to get a load of cross-ties from near the wastehouse.    After loading the hand car with cross-ties, the said employés started to push the hand car over a grade in the direction of the trestle.    As it reached the highest point of the grade, the car escaped from their hands and started down the grade towards the trestle.    The said employés attempted, but were unable, to overtake the car.    At this moment the deceased, with her little boy, was upon the trestle, going in the direction of the mill.    She saw the car, turned to escape to a safety booth, but was overtaken, knocked from the trestle, and died from injuries received.    The boy escaped, practically unhurt.

Two questions are raised by the exceptions, i. e.:    Did the Circuit Judge properly refuse the plaintiff's motion to remand?    And did the Circuit Judge properly direct a verdict for defendant company?

Where the right of removal depends upon the existence of a separable controversy, the question is to be determined by the condition of

the record in the state court at the time of the filing of the petition to remove, and the cause of action is whatever the plaintiff declares it to be. C. & O. R. R. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121; Gableman v. Peoria, etc., Ry., 179 U. S. 337, 21 Sup. Ct. 171, 45 L. Ed. 220; Powers v. C. & O. Ry., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673. This being held to be the rule, it is all-important to determine what was the case as made by the declaration in the state court—not to imagine anything, as plaintiff in error asks the court to do in the brief. In my view, this has been correctly done by the learned judge in his analysis of the complaint, as follows:

"It will be observed that the only charge against the Southern Railway Company is because of the acts of these agents of it, and of them alone, committed in the absence of any official or of any other agent of that company; that the acts of these agents are characterized as reckless, willful, and malicious. Indeed, the whole charge of the complaint seems to be for the acts of these two men, Joel and Jones. After stating that these two men had control of the car, the complaint, in the ninth paragraph, says 'that the conduct of the defendants [these two men] in turning loose the said hand car, and in allowing it to run loose, was reckless, willful, and malicious.' In the tenth paragraph it says 'that the defendants, in handling the car as aforesaid [that is, these two men], and in allowing it to kill plaintiff's intestate, were negligent.' And in the eleventh paragraph it says 'that the death of plaintiff's intestate occurred through the joint and concurrent carelessness, negligence, recklessness, and willfulness of the defendants as aforesaid.' "

The Circuit Judge then holds that the controversy is separable upon three grounds: (1) The liability of the master for the negligent act of a servant is one imposed by the policy of the law, and does not present a case of joint and concurrent tort. (2) For a simple negligent act of the servant the master is not responsible to a third person. (3) The respective liabilities of master and servant for the willful tort by the servant, without direction, participation, or ratification on the master's part, are different, and do not therefore present a case of joint and concurrent tort.

In the many cases cited in the able brief of counsel for plaintiff, it will be noted the defendants joined were joint tort feasors, so alleged, and in C. & O. Ry. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121, the case most relied on in all cases of this nature, the same is true, and the Supreme Court distinctly holds, on the authorities cited by the Chief Justice, who delivered the opinion. In all of the cases where removal was refused it was held that it was not a separable controversy, because the complaint charged concurrent negligence. In the case at bar the complaint, taking all the allegations to be true, does not make out such a case as is contemplated in the line of decisions cited. In the case of Powers v. C. & O. Ry., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673, the motion to remove was denied, on the express ground that the complaint stated a joint liability, and it would not be removed, because the defendant has no right to say that an action shall be several which the plaintiff seeks to make joint. A separate defense may defeat a joint recovery, but cannot deprive the plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings. This is putting the case of the plaintiff in error as strongly as it can be put under

the decisions. The case is so ably disposed of in the opinion of the Circuit Judge who heard the case below, found in the record, that I am constrained to adopt the following as my opinion:

"There are clearly in this complaint two controversies. One against the Southern Railway Company, because of the negligence of its servants; the other against these servants themselves, because of their own recklessness, willfulness, and malice. The controversy with the Southern Railway Company is because of the acts of its agents, for which the policy of the law makes it responsible. That with these individuals is upon their own personal responsibility for their own reckless, wanton, and malicious act. The Southern Railway Company is responsible to third persons for the negligence of its agents. But for the negligence merely, these agents are not responsible to third persons. Ewell's Evans on Agency, 438. Negligence is negative in its character. It is the omission to perform some duty. Milwaukee, etc., Ry. v. Arms, 91 U. S. 489, 23 L. Ed. 374. It implies nonfeasance, and is contradistinguished from misfeasance. To make the agent responsible to third persons, there must be some positive act of wrong on his part. The whole doctrine is clearly stated in Story on Agency (9th Ed.) §§ 308, 309: 'We come, in the next place, to the consideration of the liabilities of agents to third persons in regard to torts or wrongs done by them in the course of their agency. * * * And the distinction ordinarily taken is between acts of misfeasance or positive wrongs, and nonfeasance or mere omission of duty by private agents. The master is always liable to third persons for the misfeasance and negligence and omissions of duty of his servant in all cases within the scope of his employment. So, there, the principal in like manner is liable to third persons for the like misfeasance, negligence, and omissions of duty of his agent, leaving him to his remedy over against the agent in all cases when the tort is of such a nature as that he is entitled to compensation. The agent is also liable to third persons for his own misfeasance and positive wrongs. But he is not liable to third persons for his own nonfeasance or omissions of duty in the course of his employment. His liability in these latter cases is solely to his principal.'

"In an action against a principal for the acts of his agent, he is liable not only for acts of negligence, but also for willful and malicious acts done in the course of his employment. Andrews American Law, 860, quoting Chicago, etc., v. West, 125 Ill. 320, 17 N. E. 788, 8 Am. St. Rep. 380, and other authorities. In such an action the principal is liable only for compensatory damages. Vicksburg & M. R. R. v. Putnam, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257. But it is not responsible in punitive or vindictive damages or smart money unless the principal participated in the wrongful act of its agents, expressly or impliedly, by its conduct authorizing or approving of it either before or after it was committed. Lake Shore, etc., v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. 'A corporation, like a natural person, may be held liable in exemplary or punitive damages for the acts of an agent within the scope of his employment, provided the criminal intent necessary to warrant the imposition of such damages is brought home to the corporation. So a railroad corporation cannot be charged with punitive or exemplary damages for the illegal, wanton, or oppressive conduct of a conductor of one of its trains to a passenger.' Id. There is nothing in this complaint which measures up to these requirements as against the Southern Railway Company. Indeed, in the acts complained of, and in its mode of stating them, the averments of the complaint wholly negative the idea that the corporation could have participated. Before the corporation can be held to the same responsibility as Joel and Jones, the two other defendants, it must be averred and proved that their wanton, willful, and malicious acts were done by its authority.

"But the plaintiff, not content with his claim against the Southern Railway Company and his right to obtain compensation, seeks also damages at the hands of Joel and Jones for wanton, willful, and malicious conduct. His remedy as against them is different, far more extensive, and requring a different judgment. There is thus a controversy with the Southern Railway Company separable from that with the other defendants, and the cause is removable."

On the facts stated, and they are in substance all the facts developed in the testimony, would the court have permitted a verdict for plaintiff to stand? If not, then there is no error in directing a verdict. R. R. Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; Commissioners v. Clark, 94 U. S. 278, 24 L. Ed. 59; Thompson v. Southern Ry. Co. (C. C.) 113 Fed. 890; Patton v. Southern Ry., 111 Fed. 712, 49 C. C. A. 569; and numerous other authorities. This doctrine is settled.

Most of the reported cases refer to public crossings, or tracks used as a highway, but it will be noted this spur does not fall under either head. Trains were not run on it regularly, but frequently at irregular hours. The track was the property of the railway company, which it had the legal right to use at any and all times. Plaintiff's intestate had no legal right on the track or the trestle. Notices had been posted warning people not to use the track as a walkway, though said notices were down, and had been for a considerable time. The section master, it was shown, had even slowed up his car on the trestle to allow a party walking to get by or reach the safety booth. It was much more convenient for many of the operatives living in the village to pass to and from their homes to the mill by crossing the trestle, but in doing so they used the track with knowledge of the danger. The railway company, while objecting, as evidenced by the fact that warning notices had been posted, did not churlishly refuse to permit them to do so. Perhaps there was good reason for this. At all events, it appears to be the fact. Under such circumstances, plaintiff's intestate was, if not a trespasser, at best a mere licensee to whom the railway company owed no duty except to refrain from willful injury. There is no evidence of such willful injury. Elliott on R. R.'s, 1740; Louisville & N. R. R. Co. v. McClish, 115 Fed. 273, 53 C. C. A. 60. If this be so of a regular track, how much more is it of a spur track over which trains are operated irregularly, especially when this is known to the community. The mere fact that persons living in the neighborhood of a railroad track have become accustomed to use it to walk upon without objection on the part of the railroad does not alter or change the duty of the railroad to such persons. It would indeed be a harsh rule which would protect from accident and give damages to those who, with tacit permission, for private convenience, go on the property of another without being invited or required to do so. There is, however, abundant authority for the rule laid down by the Supreme Court of South Carolina in Haltiwanger v. R. R. Co., 64 S. C. 7, 41 S. E. 810, that if one voluntarily goes upon the track of a railroad company which is in daily, and sometimes hourly, use for the transportation of its trains, without legal authority, he becomes a trespasser.

Only the case as to the Southern Railway Company was removed and on trial, and there is no evidence of willful or wanton injury or negligence as to it to support a verdict for damages. A careful examination of the record discloses no error, hence the judgment of the Circuit Court should be affirmed. For the reasons stated, I dissent.