MILWAUKEE AND ST. PAUL RAILWAY COMPANY v. ARMS
ET AL.

1. A passenger in a railway-car who has been injured in a collision caused by the negligence of the employés of the company, is not, as a general rule, entitled in an action against the company to recover damages beyond the limit of compensation for the injury actually sustained.
2. Exemplary damages should not be awarded for such injury, unless it is the result of the wilful misconduct of the employés of the company, or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

ERROR to the Circuit Court of the United States for the District of Iowa.

This action against the railroad company to recover damages for injuries received by Mrs. Arms, by reason of a collision of a train of cars with another train, resulted in a verdict and judgment for $4,000. The company sued out this writ of error.

The bill of exceptions discloses this state of facts: Mrs. Arms, in October, 1870, was a passenger on defendant's train of cars, which, while running at a speed of fourteen or fifteen miles an hour, collided with another train moving in an opposite direction on the same track. The jar occasioned by the collision was light, and more of a push than a shock. The fronts of the two engines were demolished, and a new engine removed the train. This was all the testimony offered by either party as to the character of the collision, and the cause of it; but there was evidence tending to show that Mrs. Arms was thrown from her seat, and sustained the injuries of which she complained. After the evidence had been submitted to the jury, the court gave them the following instruction: "If you find that the accident was caused by the gross negligence of the defendant's servants controlling the train, you may give to the plaintiffs punitive or exemplary damages."

*Mr. John W. Cary* for the plaintiff in error.

The court below erred in its charge to the jury, because there was no testimony which warranted the submission of the question of gross negligence for any purpose.

The undisputed facts raise the simple legal proposition, Does the mere negligence of the defendant's servants, which resulted

in the collision, authorize the jury to give punitive or exemplary damages?

It is submitted that the authorities support the negative of this proposition. *Philadelphia & Reading R.R. Co.* v. *Derby*, 14 How. 468; *Philadelphia, Wilmington, & Baltimore R.R. Co.* v. *Quigley*, 21 id. 202–213; *Finney* v. *Milwaukee & Mississippi R.R. Co.*, 10 Wis. 388; *Craker* v. *Chicago & North-western R.R. Co.*, 36 id. 657; *Cleghorn* v. *New York Central & Hudson River R.R. Co.*, 56 N. Y. 44; *Hamilton* v. *Third Avenue R.R. Co.*, 53 id. 25; *Weed* v. *Railroad*, 17 id. 362; *Hayan* v. *Providence & Worcester R.R. Co.*, 3 R. I. 88; *Ackerson* v. *Erie R.R. Co.*, 32 N. J. 254; *New Orleans, Jackson, & Great Northern R.R. Co.* v. *Stathan*, 42 Miss. 607; *Turner* v. *North Beach & Mission R.R. Co.*, 34 Cal. 594; *Wardrobe* v. *California Stage Co.*, 7 id. 118; *Du Laurans* v. *First Division of St. Paul & Pacific*, 15 Minn. 49; *Great Western R.R. Co.* v. *Miller*, 19 Mich. 305–315; *Pennsylvania Co.* v. *Kelly*, 31 Penn. 372; *Heil* v. *Gendening*, 42 id. 493; *Hill* v. *The New Orleans & Opelousas & Great Western R.R. Co.*, 11 La. Ann. 292; *Peoria Bridge Association* v. *Loomis*, 20 Ill. 235; *Chicago & Rock Island R.R. Co.* v. *McKean*, 40 id. 218; *Louisville & Portland R.R. Co.* v. *Smith*, 2 Duv. 556; *Kentucky Central R.R. Co.* v. *Dills*, 4 Bush, 593.

*Mr. C. C. Nourse* for the defendants in error.

The petition charges the plaintiff in error with gross negligence and carelessness in suffering the trains to collide. The company offered no evidence to explain the cause of the collision. It is not to be presumed that the cause was known to the plaintiff; but that it was known to the company cannot be doubted, and the absence of testimony tending to excuse or palliate it affords the strongest possible presumption that no excuse or palliating circumstances existed. This presents, therefore, a case, not simply of collision, which is of itself *prima facie* evidence of gross negligence, but one in which the railroad company, standing dumb in the face of an accusation and charge of gross carelessness and negligence, offers no word of explanation or excuse for the calamity. The jury, therefore, were fully warranted in finding negligence of the grossest character. It remains to be considered, whether in a case of gross carelessness,

without palliating circumstances, a railroad company is liable for exemplary or punitive damages.

Gross negligence, where the highest degree of care is required, should be, and from motives of public policy is, regarded as criminal; and the elementary works furnish many instances where it is punished as a crime. Whart. Am. Crim. Law, sect. 1002 *et seq.*

In no cases is the application of this doctrine more salutary than in those where railway companies are parties.

Recognizing this fact, the legislatures of many of the States have prescribed severe punishment for negligence in the management of trains upon railways.

"Gross negligence," as used in this connection, has acquired a meaning in the law akin to wantonness. In general, it is defined to be the absence of slight diligence. Bouvier, tit. "Negligence." It is utter recklessness. Gross negligence of a railway company in the management of its passenger trains is nothing less than an utter disregard of human life; and public policy requires that it should be so considered.

The liability of railway and other corporations to exemplary damages for gross negligence is a well-settled question. *Hopkins* v. *Atlantic & St. Lawrence R.R. Co.*, 36 N. H. 9; *Taylor* v. *Railway Co.*, 48 id. 304, 318; *Goddard* v. *Grand Trunk R.R. Co.*, 57 Me. 202 (also reported in Am. Law Reg., vol. x. p. 17); Redf. on Railw. 515 *et seq.*; Shearm. & Redf. on Neg., sect. 600; *New Orleans, Jackson, & Great Northern R.R. Co.* v. *Albritton*, 36 Miss. 242; *Same* v. *Bailey*, 40 id. 395; *V. & J. R.R. Co.* v. *Patton*, 31 id. 156; *M. & C. R.R. Co.* v. *Whitfield*, 44 id. 466; *Louisville, Cinn., & Lex. R.R. Co.* v. *Mahony*, 7 Bush (Ky.), 235; *Atlantic & Gt. Western R.R. Co.* v. *Dunn*, 19 Ohio St. 162; *Pittsburgh & Ft. Wayne R.R. Co.* v. *Slusser*, id. 157; 57 Penn. St. 339; *Baltimore & Ohio R.R. Co.* v. *Blocher*, 27 Md. 277; *Williamson* v. *The Western Stage Co.*, 24 Iowa, 171; *Frick & Co.* v. *Coe*, 4 G. Greene, 555; *Chicago & Rock Island R.R. Co.* v. *McKean*, 40 Ill. 218; *C. R. I. & P. R.R. Co.* v. *Herring*, 57 id. 59. See also *Spicer* v. *C. & N. W. R.R. Co.*, 29 Wis. 580.

The right to recover exemplary damages has been expressly recognized by this court. *Day* v. *Woodworth*, 13 How. 363; *Philadelphia and Reading R.R. Co.* v. *Derby*, 14 How. 468.

In *Varillat.* v. *The New Orleans & Carollton R.R. Co.*, 10 La. Ann. 88, the court place stress upon the fact that there was no evidence to explain the cause of the collision, and sustain a verdict for exemplary damages.

MR. JUSTICE DAVIS delivered the opinion of the court.

The court doutless assumed, in its instructions to the jury, that the mere collision of two railroad trains is, *ipso facto*, evidence of gross negligence on the part of the employés of the company, justifying the assessment of exemplary damages; for a collision could not well occur under less aggravated circumstances, or cause slighter injury. Neither train was thrown from the track, and the effect of the collision was only to demolish the fronts of the two locomotives. It did not even produce the "shock" which usually results from a serious collision. The train on which Mrs. Arms was riding was moving at a very moderate rate of speed; and the other train must have been nearly, if not quite, stationary. There was nothing, therefore, save the fact that a collision happened, upon which to charge negligence upon the company. This was enough to entitle Mrs. Arms to full compensatory damages; but the inquiry is, whether the jury had a right to go farther, and give exemplary damages.

It is undoubtedly true that the allowance of any thing more than an adequate pecuniary indemnity for a wrong suffered is a great departure from the principle on which damages in civil suits are awarded. But although, as a *general rule*, the plaintiff recovers merely such indemnity, yet the doctrine is too well settled now to be shaken, that exemplary damages may in certain cases be assessed. As the question of intention is always material in an action of tort, and as the circumstances which characterize the transaction are, therefore, proper to be weighed by the jury in fixing the compensation of the injured party, it may well be considered whether the doctrine of exemplary damages cannot be reconciled with the idea, that compensation alone is the true measure of redress.

But jurists have chosen to place this doctrine on the ground, not that the sufferer is to be recompensed, but that the offender is to be punished; and, although some text-writers and courts

have questioned its soundness, it has been accepted as the general rule in England and in most of the States of this country. 1 Redf. on Railw. 576; Sedg. on Measure of Dam., 4th ed., ch. 18 and note, where the cases are collected and reviewed. It has also received the sanction of this court. Discussed and recognized in *Day* v. *Woodworth*, 13 How. 371, it was more accurately stated in *The Philadelphia, Wilmington, & Baltimore R.R. Company* v. *Quigley*, 21 How. 213. One of the errors assigned was that the Circuit Court did not place any limit on the power of the jury to give exemplary damages, if in their opinion they were called for. Mr. Justice Campbell, who delivered the opinion of the court, said, —

"In *Day* v. *Woodworth* this court recognized the power of the jury in certain actions of tort to assess against the tort-feasor punitive or exemplary damages. Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act: the word implies that the wrong complained of was conceived in the spirit of mischief, or criminal indifference to civil obligations."

As nothing of this kind, under the evidence, could be imputed to the defendants, the judgment was reversed.

Although this rule was announced in an action for libel, it is equally applicable to suits for personal injuries received through the negligence of others. Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case, the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages.

It is insisted, however, that, where there is "gross negligence," the jury can properly give exemplary damages. There

are many cases to this effect. The difficulty is, that they do not define the term with any accuracy; and, if it be made the criterion by which to determine the liability of the carrier beyond the limit of indemnity, it would seem that a precise meaning should be given to it. This the courts have been embarrassed in doing, and this court has expressed its disapprobation of these attempts to fix the degrees of negligence by legal definitions. In *The Steamboat New World* v. *King* (16 How. 474), Mr. Justice Curtis, in speaking of the three degrees of negligence, says, —

"It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed, or capable of being so. One degree thus described not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances; to whose influence the courts have been forced to yield, until there are so many real exceptions, that the rules themselves can scarcely be said to have a general operation. If the law furnishes no definition of the terms 'gross negligence' or 'ordinary negligence' which can be applied in practice, but leaves it to the jury to determine in each case what the duty was, and what omissions amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty had better be abandoned."

Some of the highest English courts have come to the conclusion that there is no intelligible distinction between ordinary and gross negligence. Redf. on Car., sect. 376. Lord Cranworth, in *Wilson* v. *Brett* (11 M. & W. 113), said that gross negligence is ordinary negligence with a vituperative epithet; and the Exchequer Chamber took the same view of the subject. *Beal* v. *South Devon Railway Co.*, 3 H. & C. 327. In the Common Pleas, *Grill* v. *General Iron Screw Collier Co.* (Law Reps., C. P. 1, 1865–66) was heard on appeal. One of the points raised was the supposed misdirection of the Lord Chief Justice who tried the case, because he had made no distinction between gross and ordinary negligence. Justice Willes, in deciding the point, after stating his agreement with the dictum of Lord Cranworth, said, —

"Confusion has arisen from regarding 'negligence' as a positive instead of a negative word. It is really the absence of such care

as it was the duty of the defendant to use. 'Gross' is a word of description, and not of definition; and it would have been only introducing a source of confusion to use the expression 'gross negligence' instead of the equivalent, — a want of due care and skill in navigating the vessel, which was again and again used by the Lord Chief Justice in his summing up."

"Gross negligence" is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term "ordinary negligence;" but, after all, it means the absence of the care that was necessary under the circumstances. In this sense the collision in controversy was the result of gross negligence, because the employés of the company did not use the care that was required to avoid the accident. But the absence of this care, whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted. To do this, there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Nothing of this kind can be imputed to the persons in charge of the train; and the court, therefore, misdirected the jury.

*For this reason the judgment is reversed, and a new trial ordered.*

Note. — In *Western Union Telegraph Company* v. *Eyser*, in error to the Supreme Court of the Territory of Colorado, it appears from the evidence embodied in the bill of exceptions that the accident which caused the injury to the defendant in error occurred at the corner of F and Blake Streets, in Denver, Col., at which point the agents of the plaintiff in error were engaged in erecting the wire which they had stretched across Blake Street, some two feet above the ground; that Eyser rode down that street on horseback, and, when near the wire, one of the bystanders called to him, warning him, but that the horse, having become entangled in the wire, fell to the ground, thereby causing the injuries complained of.

It does not appear that the plaintiff in error adopted any special means of warning; but the person in charge of the work testifies that he instructed the workmen "to keep people off the wire."

Upon the question of exemplary damages, the court instructed the jury as follows: —

"If the defendant's agents and servants, acting within the scope of their authority from defendant, were engaged in constructing a telegraph line in the city of Denver, and in such construction stretched a wire across one of the public and frequented streets of said city during the hours of the day when such

streets are wont to be· frequented, and suffered such wire to remain stretched ·across said street, and elevated such distance above the ground as to obstruct or entangle the feet of a horse passing upon said street for the space of one half-minute to a longer period ;₊ and if, unless. such wire was of such size and character as to be easily seen by persons approaching at a moderate speed, defendant's . agents omitted to station flag-sentinels or₊other sufficient means of warning to warn or notify passers-by of the place where such wire was stretched ; or if defendant's agents did station such sentinels, and they failed to give warning to plaintiff, — then the defendant was guilty of negligence ; and if from such negligence the injury complained of occurred, without₊culpable negligence on the part of plaintiff contributing thereto, then the jury ought to find for the plaintiff, and, in fixing the plaintiff's damages, should compensate the plaintiff not alone for his actual loss in the loss of time during his confinement or disability, if any, resulting from the alleged accident, but may award exemplary damages proportioned to the nature and extent or character of the injury and all circumstances of aggravation or extenuation attending the alleged negligence, of defendant : and the extent of such damages is to be measured by the sound discretion of the jury in view of all the circumstances ; but such damages are not to exceed the damages laid in the declaration, — ten thousand dollars ($10,000)."

*Mr. J. Hubley Ashton* for the plaintiff in error.· *Mr. J. W. Denver, contra.*

MR. JUSTICE DAVIS, in delivering the opinion of the court, remarked that the decision rendered in *Milwaukee & St. Paul Railway Company* v. *Arms et al., supra,* controlled this case. In no view of the evidence was the court below justified in instructing the jury that exemplary damages could be recovered. The omis-·sion to station flag-sentinels, or to give some other proper warning, while the men were engaged in putting up the wire, was an act of negligence, entitling the plaintiff to compensatory damages. But there was nothing to authorize the jury to consider this omission · as wilful : on the contrary, the evidence rebuts every presumption that there was any intentional·wrong.

*Judgment reversed.*