## WESTERN UNION TEL. CO. v. CASHMAN.

(Circuit Court of Appeals, Fifth Circuit. October 4, 1904.)

No. 1,339.

1. LIBEL—TRANSMISSION BY TELEGRAPH COMPANY—PUNITIVE DAMAGES.

A telegraph company cannot be subjected to punitive damages because of the transmission and delivery of a libelous message by its agents, where no malice or wrongful intent is shown on the part of either the company or its agents, other than might be inferred from the acts themselves.

2. DAMAGES—EVIDENCE—WEALTH OF DEFENDANT.

In a case where the jury are not warranted in awarding exemplary damages, evidence to show defendant's wealth is inadmissible.

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

Murray F. Smith and J. Hirsh, for plaintiff in error.
J. C. Bryson and O. W. Catchings, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The Western Union Telegraph Company is liable, if at all, in this case, for the acts of its agents in carrying on its business as a public carrier of private messages. Neither it nor its agents originated the message complained of as libelous, or had anything to do with it further than to transmit it in due course of business. Neither the company nor its agents were shown to have been actuated by any malice, ill will, or evil motive whatever. If the proof had shown —which it does not—that the defendant's agents were actuated by malice, ill will, or evil motive, then the question of ratification vel non by the company might be of importance; but, as there was no such evidence, we pass the matter with the suggestion that the reception by the company some time after the message complained of was received by the Oxford office of the earnings of the office in bulk, without specific knowledge of its sources, and the employment some 18 months later of the boy who, in the absence of the regular agent at Oxford, received the message, cannot be called a serious ratification. So far as damages were suffered by the plaintiff below from the transmission and delivery of the alleged libelous message, knowledge of which was confined to four agents of the company ordinarily ruled to secrecy, the telegraph company may be liable; but for the actual publication—the exploiting before the public which greatly injured plaintiff's good fame and brought him into public scandal and discredit—the telegraph company is not responsible, for the plaintiff of his own motion published in the newspaper under his own control the alleged libel, which theretofore had no public circulation, nor any private circulation except such as the plaintiff may himself have seen fit to give it.

The trial judge charged the jury as follows:

"If the jury find from the evidence that the telegram in question was transmitted over the wires of the defendant by one agent of defendant by

¶ 2. See Damages, vol. 15, Cent. Dig. § 499.

another agent of defendant, they will find for plaintiff, and assess his damages as shown by the testimony in the case. The law presumes that the plaintiff was damaged by the publication of a libel, and the law further presumes that the transmission by defendant, under the circumstances as shown by the testimony, of such words as were contained in the message in question, was negligent, or wanting in good faith, or a careless indifference to the rights of plaintiff; and if the message on its face is clearly susceptible of a libelous meaning, the jury may, in addition to such damages as will compensate the plaintiff for the injury, if any, done him, award other damages— exemplary or punitive damages—for the injury, if any, sustained by plaintiff; and in fixing the amount they may take into consideration the financial condition of the defendant."

And this substantially includes all the instructions the jury received. Analyzing the above, we find the following propositions:

(1) The defendant is liable if its agents transmitted the telegram in question, and the jury will assess damages shown by the testimony in the case.

(2) The law presumes (a) that the plaintiff was damaged by the publication of a libel; (b) that the transmission by defendant, under the circumstances as shown by the testimony, of such words as were contained in the message in question, was negligent, or wanting in good faith, or a careless indifference to the rights of plaintiff.

(3) If the message, on its face, is clearly susceptible of a libelous meaning, the jury will, in addition to such damages as will compensate the plaintiff for the injury, if any, done him, award other damages, exemplary or punitive, for the injury, if any, sustained; and in fixing the amount they may take into consideration the financial condition of the defendant.

On this writ it is contended that the last proposition in relation to awarding punitive damages is erroneous.

In Philadelphia, Wilmington, etc., Ry. Co. v. Quigley, 21 How. 213, 16 L. Ed. 73, which was an action for libel, the trial court charged the jury as follows:

"(2) And if the jury find for the plaintiff under the first instruction they are not restricted, in giving damages, to the actual positive injury sustained by the plaintiff, but may give such exemplary damages, if any, as, in their opinion, are called for and justified, in view of all the circumstances in this case, to render reparation to plaintiff, and act as an adequate punishment to the defendant."

In regard to this charge, which seems to be identical in meaning with the instruction herein complained of, the Supreme Court said:

"The second instruction contains the same error, and is objectionable for the additional reason that the rule of damages is not accurately stated to the jury. In Day v. Woodworth, 13 How. 371, 14 L. Ed. 181, this court recognized the power of a jury in certain actions of tort to assess against the tort feasor punitive or exemplary damages. Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations. Nothing of this kind can be imputed to these defendants."

This decision of the Supreme Court is quoted approvingly in Milwaukee, etc., Ry. Co. v. Arms, 91 U. S. 493, 23 L. Ed. 374. The court remarked:

"Although this rule was announced in an action for libel, it is equally applicable to suits for personal injuries received through the negligence of others. Redress commensurate to such injuries should be afforded. In ascertaining its extent the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done willfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages. It is insisted, however, that where there is gross 'negligence' the jury can properly give exemplary damages. There are many cases to this effect. The difficulty is that they do not define the term with any accuracy; and, if it be made the criterion by which to determine the liability of the carrier beyond the limit of indemnity, it would seem that a precise meaning should be given to it. * * * 'Gross negligence' is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence.' But, after all, it means the absence of the care that was necessary under the circumstances. In this sense the collision in controversy was the result of gross negligence, because the employés of the company did not use the care that was required to avoid the accident. But the absence of this care, whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted. To do this there must have been some willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences. Nothing of this kind can be imputed to the persons in charge of the train; and the court therefore misdirected the jury."

And see Western Union Telegraph Company v. Eyser, 91 U. S. 495, 23 L. Ed. 377.

In Lake Shore, etc., Ry. Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97, the whole subject of compensatory and punitive damages in cases of tort is exhaustively considered, and we quote short extracts applicable to the case in hand:

"Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though, of course, liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent. * * * Though the principal is liable to make compensation for a libel published or a malicious prosecution instituted by his agent, he is not liable to be punished by exemplary damages for an intent in which he did not participate. In Detroit Post v. McArthur [16 Mich. 447], in Eviston v. Cramer [57 Wis. 570, 15 N. W. 760], and in Haines v. Schultz [50 N. J. Law, 481, 14 Atl. 488], above cited, it was held that the publisher of a newspaper, when sued for a libel published therein by one of his reporters without his knowledge was liable for compensatory damages only, and not for punitive damages, unless he approved or ratified the publication; and in Haines v. Schultz the Supreme Court of New Jersey said of punitive damages: 'The right to award them rests primarily upon the single ground: wrongful motive.' 'It is the wrongful personal intention to injure that calls forth the penalty. To this wrongful intent knowledge is an essential prerequisite.' 'Absence of all proof bearing on the essential question, to wit, defendant's motive, cannot be permitted to take the place of evidence, without leading to a most dangerous extension of

the doctrine respondeat superior.' 50 N. J. Law, 484, 486, 14 Atl. 488. No doubt a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent necessary to warrant the imposition of such damages is brought home to the corporation."

As this case shows no evil motive nor malice beyond that which the law infers from the wrongful act, nor that the wrongful act was conceived by the telegraph company or its agents in the spirit of mischief or criminal indifference to civil obligations, we are clear that the telegraph company is not liable in punitive damages.

On the trial, and over the objections of the telegraph company, the court admitted evidence showing the great corporate wealth of the defendant, evidently offered with a view of obtaining enhanced damages. As there was no evidence in the case warranting the jury to award more than compensatory damages, the evidence in question was improperly admitted. See Sedgwick on Damages, § 385, and Washington Gaslight Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543.

The judgment of the Circuit Court is reversed, and the case is remanded, with instructions to award a new trial.