BENNER v. TRUCKEE RIVER GENERAL ELECTRIC CO.

(Circuit Court, D. Nevada. July 17, 1911.)

No. 1,109.

1. DEATH (§ 93*)—WRONGFUL DEATH—EXEMPLARY DAMAGES.

·Comp. Laws Nev. § 3983, provides that whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the persons who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, and section 3984 provides that the jury may give such damages, pecuniary and exemplary, as they shall deem just and fair. Held that, while the jury has discretion to grant exemplary damages in such an action, it should be permitted to award them only when the injury is proved to have occurred under circumstances indicating fraud, malice, oppression, intentional wrong, wantonness, or a degree of recklessness amounting to indifference to the rights and welfare of others.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 98; Dec. Dig. § 93.*

Punitive damages for death by wrongful act, see note to McGhee v. McCarley, 44 C. C. A. 259.]

2. DEATH (§ 93*)—WRONGFUL DEATH—EXEMPLARY DAMAGES.

In an action against a corporation for decedent's wrongful death caused by the negligence of the manager in charge of its electrical appliances in permitting an electric high-tension wire to rest on an iron covered passageway, from which decedent received a shock which caused his death, plaintiff could not recover exemplary damages authorized in certain cases of wrongful death by Comp. Laws Nev. § 3984, by merely proving that defendant was not notified of the sagging wire, and that its agent promised to repair the same, in the absence of proof that defendant company in any way participated in the negligence of its agent, or of bad faith, evil intent, malice, or intentional wrong, or that defendant knowingly employed an unfit and incompetent servant.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 98; Dec. Dig. § 93.*]

At Law. Action by A. S. Benner, as administrator of the estate of Clarence J. Benner, deceased, against the Truckee River General Electric Company. Judgment for plaintiff, and defendant moves for a new trial. Granted.

Mack, Green, Brown & Heer and Gray Mashburn, for plaintiff.

W. A. Massey and Cheney, Downer, Price & Hawkins, for defendant.

FARRINGTON, District Judge. This action was brought by A. S. Benner, as administrator, to recover from the Truckee River Gen-

eral Electric Company the sum of $30,000 damages for the death of his son, Clarence J. Benner. The deceased at the time of his death was in the employ of the Charles Butters Company, Limited, at Virginia City, Nev. Leading from the mine in which he was working to a rock-breaker several hundred feet to the east was an iron covered passageway. At the time of the accident defendant's electric wires crossed this passageway nearly at right angles. The wires were supported by poles on each side. When these poles were in a vertical position, the wires were suspended three or four feet above the ridge of the passageway.

Some time in July, 1909, the guy wire holding up one of the poles to the south became loosened, or was broken. The two poles immediately to the south, thus deprived of support, under strain of the high-tension wires, were gradually inclined to the north to such an extent that the sagging wires finally rested upon and charged the iron covered passageway with a deadly current of electricity.

Upon the morning of August 18, 1909, Clarence Benner, coming out of the mine, sat down in this passageway, leaned against its corrugated iron wall, and at once received a shock of electricity which killed him.

It is conceded by plaintiff that under the Nevada statute: (1) Exemplary damages cannot be awarded by the jury in every case of wrongful death, but that, in addition to proof of negligence, there must also be proof that the negligence was willful, wanton, or malicious: (2) and, further, that the willfulness, wantonness, or malice must be that of the defendant corporation, and not merely of an employé.

[1] By these admissions some difficult questions of statutory interpretation are eliminated. That a jury in a proper case, under the Nevada statute, can award exemplary damages, is too clear to admit of controversy. Christensen v. Floriston Pulp & Paper Co., 29 Nev. 552, 570, 92 Pac. 210.

In the second section of the act under which this action was brought (Comp. Laws of Nev. § 3984), it is provided:

"The jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just."

The character of the action referred to is shown in the first section of the act:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages."

In other words, in every such action, where "the death of a person shall be caused by wrongful act, neglect, or default, the jury may give such damages, pecuniary and exemplary, as they shall deem fair and just."

The jury decided that Clarence Benner's death was caused by the wrongful act, neglect, or default of the Truckee River General Elec-

tric Company. This determination is amply supported by the testimony. This having been shown, it was permissible for the jury, under the express language of the statute, to "give such damages, pecuniary and exemplary, as they shall deem fair and just."

It is perhaps worthy of note that the power to give damages is not in terms withheld by the statute, until the wrongful act is shown to be wanton, or the negligence to be gross, or the default to be so flagrant as·to amount to reckless disregard of human life and safety.

This discretion of the jury, though conferred in language so broad as to suggest no restriction whatever, is not purely arbitrary. In this it is, like all other discretionary power, vested in those who administer the law.

Exemplary damages are inflicted by way of punishment, and can only be awarded when the injury occurs under circumstances indicating fraud, malice, oppression, intentional wrong, wantonness, or a degree of recklessness which amounts to indifference to the rights and welfare of others.

The statute of Washington (2 Hill's·Code, § 138) provides that the jury "in every such action may give such damages, pecuniary or exemplary, as under all the circumstances of the case may to them seem just."

While this language is not precisely the same as in the Nevada statute, particularly in the use of "or" instead of "and," it is difficult to differentiate the degrees of discretion conferred on the jury in the two provisions.

In construing the Washington statute, the Supreme Court of that state, in Klepsch v. Donald, 4 Wash. 436, 444, 30 Pac. 991, 994 (31 Am. St. Rep. 936), says:

"Our statute contains the words 'pecuniary or exemplary,' and they are entitled to be considered, and have their proper weight. Construing them, we do not understand that in every case both pecuniary and exemplary damages are to be given, but that in a proper case, as where the injury occurs through accident procured by some neglect, the damage is limited to pecuniary loss; whereas, in cases of injuries caused by moral or legal wrong amounting to willfulness, exemplary damages may be added."

The statute of Missouri (section 2866, Rev. Stats. 1899), providing a recovery in cases of wrongful death, declares that:

"In every such action the jury may give such damages, not exceeding $5,-000, as they may deem fair and just, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect, or default."

Notwithstanding the large discretion thus vested in the jury, it is the settled law of Missouri that, where there is no evidence of any "aggravating circumstances," it is improper in the instructions to include the words "having due regard to the mitigating or aggravating circumstances." Those words are only proper in a case in which punitive damages or smart money may be allowed. Barth v. Railroad Co., 142 Mo. 535, 44 S. W. 778, 785; Otto Kuehne Preserving Co. v. Allen, 148 Fed. 666, 78 C. C. A. 418.

With these authorities plaintiff's first admission is in line.

It is alleged in the complaint that the Truckee River General Electric Company "willfully, wantonly, maliciously, carelessly and negligently failed to repair said guy wire and restore said two poles to a perpendicular position, so that the said high-tension power wires which they carried should be held suspended above said iron covered passageway."

At and prior to the time of the accident, William Wright attended to business for the defendant at Virginia City, and looked after its electric wires, but in what capacity the evidence does not disclose. Three weeks before the accident, again two or three days before, and finally on the morning of the day of the accident, William Wright was notified as to the condition of the pole and wires by Mr. Stone, manager for the Butters Company. Mr. Stone testifies:

"I told him that my attention had been called by my electrician the night before, the night of the 17th, to the fact that the wires were getting pretty close to the top of that roof, and I told him that if he didn't have time we would fix it. He said: 'Let it alone. It is all right. I am going over there to-day. I inspected the wire yesterday (the 17th) and there is still three or four inches clearance, and I will probably go over there to-day.' * * * If I remember rightly, the first time I spoke to him about it, the wire had between 18 and 24 inches clearance; the second time about a foot. I don't remember exactly, because it was not measured, but I should judge that, just glancing from the ground up to the roof. And the third time when it was reported to me that the wire was sagging, I did not see it."

It is admitted that defendant was notified a short time prior to the 18th day of August that said guy wire was broken or loosened. It is also alleged in the answer that:

"An examination was made on receipt of said notice, and that at the time said notice was given said high-tension wires were not resting upon said iron covered passageway, and that the agent of this company promised as soon as practicable, using all possible diligence therefor, to repair said broken guy wire and straighten up said poles."

Mr. Gerrey, electrician for the Butters Company, also spoke to Mr. Wright on a number of occasions about this matter. A few days before the accident Mr. Wright told Mr. Gerrey:

"I did not see any apparent danger because the wire was two inches from the top, from the gable of the roof, but he would be over and fix it."

In Railway Co. v. Prentice, 147 U. S. 101, 115, 13 Sup. Ct. 261, 266 (37 L. Ed. 97), the Supreme Court quotes with approval the following language from Cleghorn v. New York Central Railroad, 56 N. Y. 44, 47, 48, 15 Am. Rep. 375:

"For injuries by the negligence of a servant while engaged in the business of the master, within the scope of his employment, the latter is liable for compensatory damages; but for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established by showing that the act of the servant was authorized or ratified, or that the master employed or retained the servant, knowing that he was incompetent, or, from bad habits, unfit for the position he occupied. Something more than ordinary negligence is requisite: it must be reckless and of a criminal nature, and clearly established. Corporations may incur this liability as well as private persons. If a railroad company, for instance, knowingly and wantonly employs a drunken engineer or switchman, or retains one after knowledge

of his habits is clearly brought home to the company, or to a superintending agent authorized to employ and discharge him, and injury occurs by reason of such habits, the company may and ought to be amenable to the severest rule of damages; but I am not aware of any principle which permits a jury to award exemplary damages in a case which does not come up to this standard, or to graduate the amount of such damages by their views of the propriety of the conduct of the defendant, unless such conduct is of the character before specified."

To the same effect, see the following authorities: Cerrillos Coal R. Co. v. Deserant, 9 N. M. 49, 49 Pac. 807, 813; International & G. N. Ry. Co. v. Garcia, 70 Tex. 207, 7 S. W. 802; Arkansas Const. Co. v. Eugene, 20 Tex. Civ. App. 601, 50 S. W. 736; Western Union Tel. Co. v. Landry (Tex. Civ. App.) 108 S. W. 461; Eviston v. Cramer, 57 Wis. 570, 15 N. W. 760; Sullivan v. Oregon R. & N. Co., 12 Or. 392, 7 Pac. 508, 516, 53 Am. St. Rep. 364; Turner v. North Beach & Mission R. Co., 34 Cal. 594; Mendelsohn v. Anaheim Lighter Co., 40 Cal. 657; Maisenbacker v. Soc. Concordia, 71 Conn. 369, 42 Atl. 67, 71 Am. St. Rep. 213; Western Union Tel. Co. v. Cashman, 132 Fed. 805, 65 C. C. A. 607.

In Railway Co. v. Arms, 91 U. S. 489, 495, 23 L. Ed. 374, an action by an injured passenger to recover damages caused by the servants of the defendant corporation, it was held error to instruct the jury thus:

"If you find that the accident was caused by the gross negligence of the defendant's servants controlling the train, you may give punitive or exemplary damages."

[2] The court said that the "failure of the employés to use the care that was required to avoid the accident," whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury inflicted. To do this, there must be willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences.

In Railway Co. v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146, the jury were permitted to give exemplary damages, because it was shown that the defendant corporation, by its governing officers, participated in and directed all that was planned and done in taking possession of plaintiff's property.

In Western Cottage Piano & Organ Company v. Anderson, 97 Tex. 432, 79 S. W. 516, it was held that where the state agent of a foreign corporation had authority and discretion to do whatever was necessary to be done in the transaction of the business of the corporation in that state, without referring the matter to any other person for direction or advice, the corporation was liable, not only for actual damages, but for exemplary damages for the agent's fraudulent representations in transferring a mortgage held by the corporation.

In the Benner Case the evidence does not show Wright's position with the company, or his authority.

It is admitted that defendant corporation was notified the guy wire was broken, and also that an investigation was immediately had, and defendant's agent promised to repair the wire and straighten up the

poles with all possible diligence; but there is no evidence or other admission showing that defendant participated in any way in the negligence complained of. It may be assumed that the examination disclosed to defendant that the high-tension wires were in close proximity to the roof of the passageway; but there is nothing to indicate that defendant ever knew, prior to the accident, that the wires actually rested on the roof. There is no evidence of bad faith, or evil intent, or malice, or intentional wrong; nor does it appear that the company had knowingly employed unfit and incompetent servants, or that Wright was a corporate officer, or that he had full charge of defendant's electric lines in Virginia City.

The testimony tending to show that defendant corporation was guilty of gross, willful, or malicious negligence is too meager to warrant the submission of the question of exemplary damages to the jury; consequently the court erred in refusing to instruct the jury that exemplary damages could not be awarded.

Motion for new trial granted. Plaintiff will be granted 20 days to take such steps as he may be advised.