KERCHEVAL v. ALLEN et al.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

No. 3724.

1. INTERNAL REVENUE ⟪⇒42—SEARCHES AND SEIZURES—STATUTORY PROVISIONS.

Rev. St. § 3462 (U. S. Comp. St. 1913, § 6364), authorizing the issuance of search warrants when an internal revenue officer makes oath that he has reason to and does believe that a fraud on the revenue has been or is being committed upon or by the use of the premises sought to be searched, and section 3177 (section 5900), authorizing any collector, deputy collector, or inspector to enter in the daytime any building or place where articles subject·to tax are made, produced, or kept, for. the purpose of examining such articles, imposing a penalty for a refusal to admit such officers, and providing that, when such premises are open at night, such· officers may enter them while so open, are general in their nature, suitable for the collection of internal revenue taxes subsequently imposed by Congress, and as they are repugnant to no provisions of the Oleomargarine Act (Act Aug. 2, 1886, c. 840, 24 Stat. 209 [Comp. St. 1913, §§ 6215–6232]), they are applicable to the collection of the special taxes imposed by that act.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 114–116; Dec. Dig. ⟪⇒42.]

2. INTERNAL REVENUE ⟪⇒42—SEARCHES AND SEIZURES—STATUTORY PROVISIONS.

Rev. St. § 3462, does not require that searches, made under search warrants thereby authorized, shall be made only by the one officer who verified the application for the warrant.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 114–116; Dec. Dig. ⟪⇒42.]

3. INTERNAL REVENUE ⟪⇒22—SEARCHES—ACTIONS FOR WRONGFUL SEARCHES—INSTRUCTIONS.

Even though a search warrant to search premises, where it was believed a fraud upon the revenue was being committed, limited the search to the officer who verified the application for the warrant, in an action against him and other officers for damages, it was not error for the court to charge that the officer having the warrant in charge had a right to execute it, and to refuse instructions that the warrant furnished no jurisdiction for an entry into plaintiff's dwelling house, or for a search therein by any of the defendants, as such instructions would have condemned as

unlawful the acts of the officer who verified the application, while the instruction given referred only to him.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 47–61; Dec. Dig. ☞22.]

**4.** INTERNAL REVENUE ☞22—SEARCHES—LIABILITY OF OFFICERS.

Internal revenue officers, in executing a search warrant addressed to them which was fair on its face, did not have the duty of deciding whether a proper application was made to the United States commissioner who issued the warrant, nor whether he properly exercised his discretion in issuing it, since, if an officer or tribunal possesses jurisdiction over a subject-matter on which a judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process is regular on its face, it will give full and entire protection to the ministerial officer executing it, though serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment on which the order or process is issued.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 47–61; Dec. Dig. ☞22.]

**5.** INTERNAL REVENUE ☞22—SEARCHES—ACTIONS—ISSUANCE.

In an action against internal revenue officers for an alleged wrongful search of plaintiff's premises, under a warrant authorizing them to search such premises for oleomargarine unlawfully manufactured, plaintiff could not attack the warrant because it directed the seizure of all papers, route cards, lists, and bills, and all other documents relating to the manufacture, purchase, etc., of oleomargarine, where no complaint was made that defendants seized any such papers.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 47–61; Dec. Dig. ☞22.]

**6.** INTERNAL REVENUE ☞42—SEARCHES—ACTIONS FOR WRONGFUL SEARCHES—INSTRUCTIONS.

In an action against internal revenue officers for damages from an alleged wrongful search of plaintiff's premises, where the evidence showed that the door of plaintiff's house was open, and that the officers entered through that door, an instruction that the search warrant gave them no authority to enter plaintiff's premises and make a search at night was properly refused, as it ignored the right of the officers to exercise in the nighttime the authority given by Rev. St. § 3177, which provides that, when premises where articles subject to tax are made, produced, or kept are open at night, such officers may enter them while so open.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 114–116; Dec. Dig. ☞42.]

**7.** INTERNAL REVENUE ☞42—SEARCHES—EXECUTION OF SEARCH WARRANT IN NIGHTTIME.

The execution of a search warrant issued under Rev. St. § 3462, to search premises for oleomargarine, manufactured in fraud of the revenue laws, by entering plaintiff's dwelling house through a door which was open at half past 8 at night, was not illegal.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 114–116; Dec. Dig. ☞42.]

**8.** INTERNAL REVENUE ☞30—SEARCHES—ACTIONS FOR WRONGFUL SEARCHES—INSTRUCTIONS.

In an action for damages against internal revenue officers, an instruction which predicated an unlawful act upon the destruction of internal revenue stamps on tubs containing oleomargarine, belonging to plaintiff, was properly refused, where there was evidence that the stamps on the tubs had been canceled many months before, and that the tubs appeared dirty and greasy, as an inference might be drawn from this evidence that the tubs had been refilled after the original contents had been withdrawn, and under Act Aug. 2, 1886, c. 840, §§ 6–13, 24 Stat. 210, 211 (Comp. St.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1913, §§ 6218–6225), the stamps would protect the tubs only until the original contents were emptied, and thereafter it was the duty of the person in whose hands the tubs were, or of any revenue officer, to destroy the stamps thereon.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 86, 91; Dec. Dig. ☞30.]

9. INTERNAL REVENUE ☞22—SEARCHES—ACTIONS FOR WRONGFUL SEARCHES —INSTRUCTIONS.

In an action against a collector of internal revenue and his deputies for damages from an alleged unlawful search of plaintiff's premises, where some of the acts shown by testimony were lawful and not injurious, while there was an issue as to the occurrence of other acts, an instruction that the collector was responsible for the acts of any of his deputies, as mentioned in the evidence, was properly refused.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 47–61; Dec. Dig. ☞22.]

10. TRIAL ☞261—INSTRUCTIONS BAD IN PART.

There was no error in refusing a requested instruction, a part of which could not have been properly given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 484, 660, 671, 673, 675; Dec. Dig. ☞261.]

11. INTERNAL REVENUE ☞22—WRONGFUL SEARCH—PUNITIVE DAMAGES.

A collector of internal revenue, who was not present when other revenue officers attempted to break into plaintiff's dwelling house, or when they unlawfully entered and searched such dwelling house, and who neither participated in, authorized, nor ratified the acts done, was not liable for punitive damages; and hence an instruction that the rule as to the recovery of such damages against him was the same as was declared in the charge as to the other defendants was properly refused, where such rule allowed the recovery of punitive damages if the acts of defendants were malicious.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 47–61; Dec. Dig. ☞22.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Charles E. Kercheval against Edmund B. Allen and others. Judgment for defendants, and plaintiff brings error. Affirmed.

William R. Orthwein, P. H. Cullen, Thomas T. Fauntleroy, and Shepard Barclay, all of St. Louis, Mo., for plaintiff in error.

Homer Hall, Asst. U. S. Atty., of St. Louis, Mo. (Charles A. Houts, U. S. Atty., of St. Louis, Mo., on the brief), for defendants in error.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

T. C. MUNGER, District Judge. The plaintiff in error, hereinafter referred to as plaintiff, sued the five defendants in error, hereinafter referred to as defendants, alleging that they were officers or agents in the internal revenue service of the United States, and as a first cause of action that on February 14, 1911, they attempted to break and enter his dwelling house without warrant or authority, causing an injury to a door. The second cause of action alleged that on February 17, 1911, the defendants unlawfully entered into his dwelling house, and publicly searched the house and premises, and

unlawfully emptied three partially filled tubs of oleomargarine into a fourth, and defaced and destroyed the canceled United States internal revenue stamps thereon, for which acts he prayed the recovery of damages.

The defendant Allen, who was the collector of United States internal revenue for that district, filed an answer containing a general denial of the plaintiff's charges, while the answers of the other defendants, in addition to a denial of any trespass, justified their entry as officers of the internal revenue service of the United States, and as possessed of a warrant from a United States commissioner, authorizing them to make the entry and search. The evidence showed that plaintiff for some years had been a dealer in oleomargarine in St. Louis, Mo., and carried on the business in the basement of a one-story dwelling house, in which he and his family resided. Three of the defendants made an endeavor to get in the door on the date stated in the first count, and four of them entered the house at the date stated in the second count, and made an investigation and search of the portion where the oleomargarine was kept and handled.

There was a trial and verdict for the defendants. Of the errors relied on by plaintiff, the first relates to the validity of a search warrant. The plaintiff himself offered in evidence the search warrant, issued by a United States commissioner at St. Louis, directed to defendant Allen as collector, and to any and all deputy collectors of internal revenue for that district, which contained the following recitals and commands:

"Whereas, complaint has this day been made before me upon oath of John T. Richardson, deputy collector of internal revenue, First district of Missouri, charging and alleging that he has good reason to believe and does verily believe that one Charles Kercheval, in the Eastern division of the Eastern judicial district of Missouri, in a certain one-story and basement dwelling house, known as No. 4832 Leduc street, in the city of St. Louis, state of Missouri, and in a brick stable in the rear of said dwelling house, unlawfully carries on the business of a manufacturer of colored oleomargarine without having first paid the special tax therefor as required by law, by mixing coloring matter with white or uncolored oleomargarine and thereby making a product to resemble butter in a shade of yellow for sale, thereby defrauding the United States out of its revenue, said Charles Kercheval has in his possession in said premises certain white or uncolored oleomargarine, and certain colored oleomargarine which has been unlawfully colored in the manner aforesaid by the said Charles Kercheval, and that said colored oleomargarine is being concealed by the said Charles Kercheval; and

"Whereas, said J. T. Richardson has upon oath stated such facts as lead me to believe and find that there is probable cause for believing that the said Charles Kercheval is unlawfully carrying on said business of manufacturing colored oleomargarine without having first paid the special tax therefor as required by law:

"Now, therefore, this is to command and authorize you and any of your deputies to enter and search the said premises known as No. 4832 Leduc street, and the brick stable in the rear thereof, in the city of St. Louis, state of Missouri, and to take possession of and secure all of the colored oleomargarine in said premises which has been unlawfully manufactured as hereinbefore described, all white or uncolored oleomargarine in said premises, all coloring matter used in coloring white or uncolored oleomargarine, all oleomargarine tubs, all papers, route cards, lists, and bills, and all other documents in said premises relating to the manufacture, purchase, sale, or delivery of white or uncolored oleomargarine, colored oleomargarine, and coloring matter, and to hold and dispose of the same according to and as directed by law."

[1] The application for the search warrant was also offered in evidence. Section 3462, Revised Statutes of the United States, providing for the issuance of search warrants, is as follows:

"The several judges of the Circuit and District Courts of the United States, and commissioners of the Circuit Courts, may, within their respective jurisdictions, issue a search warrant, authorizing any internal revenue officer to search any premises within the same, if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises."

A further provision in section 3177 of the Revised Statutes, relating to the duty of officers of the United States internal revenue, is as follows:

"Any collector, deputy collector, or inspector may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, within his district, so far as it may be necessary, for the purpose of examining said articles or objects. And any owner of such building or place, or person having the agency or superintendence of the same, who refuses to admit such officer, or to suffer him to examine such article or articles, shall, for every such refusal, forfeit five hundred dollars. And when such premises are open at night, such officers may enter them while so open, in the performance of their official duties."

These provisions of the Internal Revenue Act are general in their nature, are suitable for the collection of internal revenue taxes subsequently imposed by Congress, and, as they are repugnant to no provisions of the Oleomargarine Act, are applicable to the collection of the special taxes imposed by that act. United States v. Barnes, 222 U. S. 513–519, 32 Sup. Ct. 117, 56 L. Ed. 291.

[2, 3] The plaintiff requested instructions declaring the search warrant to be void, and to furnish no justification for entry by any of the defendants into the plaintiff's dwelling house, or for a search therein; but the court denied the request, and told the jury that the warrant was legal and that the officer having it in charge had a right to execute it. Several objections are made to this action by the court. It is said that warrant was void because section 3462, Revised Statutes, authorizes its issuance only to the internal revenue officer who verifies the application therefor; whereas, it was served, in this instance, not only by that officer, but by two other deputy collectors. It would unduly hamper the service of such warrants to limit searches made thereunder to the one officer who had sworn to the application therefor, and no such construction of the statute is necessary; but the objections urged are not tenable in this case, because the requested instructions included in the sweep of their condemnation as unlawful the acts of the officer who had made the preliminary oath, and the instruction given by the court was limited to a declaration that the officer who had the warrant in charge had the right to execute it.

[4] Another reason assigned for the imputed error in these instructions is that the search warrant was void, because it was for an unreasonable search of the plaintiff's premises, thereby offending against the restrictions of the fourth amendment to the United States Constitution. In support of this theory it is said that officers of the internal revenue service had been through plaintiff's place of business and had made several examinations within a few days' time prior

to the entry complained of. It is also claimed that the facts stated in the application for the warrant were insufficient to justify its issuance, and that it was void because it called for the seizure of the books, papers, and accounts of plaintiff. But the officers, the defendants here, in executing a specific warrant addressed to them which was fair on its face, did not have the duty of deciding if a proper application had been made to the United States commissioner who issued the warrant, nor if he had properly exercised his discretion in issuing the warrant. "If the officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution the party aggrieved * * * may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued." Erskine, Collector, v. Hohnbach, 14 Wall. 613–616, 20 L. Ed. 745; Haffin v. Mason, 15 Wall. 671–675, 21 L. Ed. 196; Bryan v. Ker, 222 U. S. 107–113, 29 Sup. Ct. 684, 56 L. Ed. 114; Harding v. Woodcock, 137 U. S. 43–46, 11 Sup. Ct. 6, 34 L. Ed. 580; Conner v. Long, 104 U. S. 228–237, 26 L. Ed. 723; Matthews v. Densmore, 109 U. S. 216, 3 Sup. Ct. 126, 27 L. Ed. 912; Stutsman County v. Wallace, 142 U. S. 293–309, 12 Sup. Ct. 227, 35 L. Ed. 1018.

[5-7] It is urged that the search warrant was void because it directed the seizure of "all papers, route cards, lists, and bills, and all other documents in said premises relating to the manufacture, purchase, sale, or delivery of white or uncolored oleomargarine, colored oleomargarine, and coloring matter"; but, as no complaint is made that the defendants seized any of these papers, this ground of attack upon the warrant is not open to the plaintiff. The plaintiff assigns error in the refusal of tendered instructions which declared that the search warrant gave no authority to the defendants to enter plaintiff's premises and to make a search at night. The evidence shows that the officers called at plaintiff's house at half past 8 in the night, but that the door to his house was open and they entered through that door.

Section 3177, Revised Statutes, above quoted, authorizes any collector to enter in the daytime any building or place where any articles subject to a tax are made, produced, or kept within his district, so far as it may be necessary, for the purpose of examining said articles, and when said premises are open at night such officers may so enter them while so open, in the performance of their official duties. The instructions tendered proceeded on the theory that the officers' rights to enter and make examination were referable solely to the law authorizing search warrants, and ignored the right of the officers to exercise, in the nighttime, the authority given by section 3177, Revised Statutes. Moreover, the statute cited authorizing the issu-

ance of search warrants does not limit service thereof to the daytime, and we are cited to no cases which hold that service should be so limited. Search warrants are analogous to warrants for arrest for crime, and the two commands are often combined in one warrant. It is proper, and often necessary, that arrests for crime be made in the nighttime. 2 Hale, P. C. 113; 1 Russell on Cr. 840; 1 Bishop, Cr. Proc. 207-1. The execution of a search warrant is so similar to that of a warrant of arrest for crime that the officer, in executing it, may break open the outer door of a dwelling. 1 Chitty, Cr. Law, 57-66; 2 Hale, P. C. 151; 2 Bishop's Cr. Proc. 208-1. Unless a search warrant may be served in the night season, many offenses may be committed with impunity, as the unlawful business may be carried on only during that time, and the evidences of its commission may be gone when the day returns. We think the execution of the search warrant in the nighttime was authorized, and there was no error in refusing the instructions.

[8] There was evidence that one of the defendants, finding several tubs in plaintiff's place of business, each of which contained but a few pounds of oleomargarine, emptied the contents on the table used by plaintiff for preparing and printing the packages which he sold, and then destroyed the stamps on the tubs so emptied. Complaint is made of the refusal of an instruction relating to this act; but we find no error in its refusal, because it predicates an unlawful act of the officer upon the destruction of the stamps on the tubs, provided there was some oleomargarine in the tubs which was the property of plaintiff, whereas, the stamps protect such tubs only until the original contents have been emptied, when it becomes the duty of the person in whose hands the tub is, or of any revenue officer, to destroy the stamps thereon. Sections 6-13, 24 Stat. 209, 1 Supp. Rev. Stats. 508. There was evidence that the stamps on these tubs had been canceled many months before, and that the tubs appeared dirty and greasy, so that there was an inference to be drawn that they had been used for refilling after the original contents had been withdrawn.

[9] The plaintiff was not entitled to the instruction requested charging Allen, as collector, with responsibility for the acts of the deputies, because there was an issue as to the occurrence of some of these acts, and some of the acts depicted in the testimony were lawful, and not injurious, while the instruction requested a declaration by the court that the collector was responsible "for any act or acts of any of his deputies, as mentioned in evidence."

[10, 11] It is also assigned as error that the court refused a tendered instruction declaring that no defense had been made out for Allen, the collector, because his answer did not plead a justification for the acts of the deputy collectors; and complaint is also made that a portion of the court's charge gave Allen the benefit of the evidence of justification, although such defense was not pleaded. This assumption as to the charge of the court is founded on an error of construction of the charge, as it only declared that the general denial put in issue all the facts pleaded and complained of in plaintiff's petition. There was no error in refusing the instruction asked (Blanton v. United States, 213 Fed. 320, 130 C. C. A. 22, Ann. Cas. 1914D,

1238), a portion of which related to the right of Allen to the defense of justification, because another portion of that instruction told the jury that the rules of law as to the recovery of punitive damages against Allen were the same as declared in the charge as to the other defendants, and that rule allowed the recovery of punitive damages, if the jury found that the acts of defendants were malicious; but the evidence was undisputed that Allen was not present at either of the occasions complained of, nor did he participate in, authorize, or ratify the acts done, and therefore he was not liable for punitive damages. Lake Shore & Michigan Southern Railway Co. v. Prentice, 147 U. S. 101–107, 13 Sup. Ct. 261, 27 L. Ed. 97; Western Union Tel. Co. v. Cashman, 132 Fed. 805–807, 65 C. C. A. 607; Pacific Packing & Navigation Co. v. Fielding, 136 Fed. 577–579, 69 C. C. A. 325; Toledo, St. L. & W. R. Co. v. Gordon, 143 Fed. 95–98, 74 C. C. A. 289; Norfolk & P. Traction Co. v. Miller, 174 Fed. 607–609, 98 C. C. A. 453.

The judgment of the lower court is affirmed.